On the return-day of the alternative writ at the October term, 1877, both respondents made a motion to quash the writ as improvidently granted, on the grounds: (1) That the provisions of the act of March 6, 1868, entitled "An act to authorize the village of Lake City to aid in the construction of the St. Paul Chicago railway," (Sp. Laws 1868, c. 15,) were, as respects the town of Lake, then known by the corporate name of the town of Lake City, wholly nugatory, because the subject of that act, as indicated in its title, related to the "village," instead of the "town," of Lake City, and that the amendatory act of February 2, 1869, (Sp. Laws 1869, c. 41,) did not cure this defect. (2) Conceding the validity of such act as amended, and its application to the town of Lake City, the authority it conferred to create and issue bonds for the purpose named, expired on the first day of August, 1870, and as none had been formally executed and delivered under the act prior to that date, it is now too late to regain it; and (3) That the agreement entered into by the town, as evidenced by the ordinance, and set up in the writ, was without consideration and void. In addition to these grounds of objection common to both respondents, the city of Lake City made the further one that the writ would not lie as against it, because, being a new and distinct municipal *Page 407 
On February 2, 1869, while the railway was still in course of construction, the legislature passed an act, (Sp. Laws 1869, c. 41,) entitled "an act to amend" the act of 1868, and providing that such act "be and the same is hereby amended as follows, to wit: The word `town' shall be and is hereby substituted for and in the place of the word `village,' wherever it occurs in said act; and the word `thirty' likewise substituted for the word `twenty,' preceding the word `years,' in the first section of said act; and the word `ten' likewise substituted for the word `thirty' preceding the word `days,' in the second section of said act." These amendments are inserted in parentheses in the act printed in the note.
Pursuant to the authority given by these acts, and while the railway was still in course of construction, the town of Lake City by its board of supervisors duly convened on February 6, 1869, adopted an ordinance, which after referring to the acts of 1868 and 1869 as the authority for its passage, proceeds as follows:
"We, the supervisors of the town of Lake City, do ordain that, *Page 408 
in order to aid the St. Paul Chicago Railway Co. in the construction of their railway, there shall be donated and delivered to the said company $75,000 of the bonds of the town of Lake City, bearing interest at the rate of six per cent. per annum," etc., "the principal to mature thirty years after the date of such bonds; and for the payment of which a sinking-fund shall be provided, to commence within ten years from the date aforesaid, sufficient to discharge the same at maturity: andprovided, that said bonds shall not be delivered until said railway shall be constructed and in full operation, with cars running thereon, from St. Paul to Winona: and provided said railway shall be so completed and in operation on or before April 1, 1872; and for the delivery of said bonds and the payment of the interest and principal thereof, the faith and credit of said town of Lake City are hereby pledged.
"And it is further ordained that the question of issuing said bonds as aforesaid shall be submitted to the legal voters of said town of Lake City, at a special election, which is hereby appointed and ordered to be held on February 23, 1869; that *Page 409 
at least ten days' notice of said election be given, by publishing such notice at least once in each week for two successive weeks in the Lake City Leader, together with a copy of this ordinance."
After providing for the manner of conducting the election, and canvassing the returns, the ordinance concludes: "And if the majority of the ballots so cast at such election shall have upon them the words `for railway bonds,' then the said bonds shall be issued and delivered, upon the terms and conditions above named, but not otherwise."
Publication was made and the election held and the votes canvassed as required by the ordinance, a large majority of votes being for the issue of the bonds.
Partly in consideration of the obligation of the town, thus contracted, to issue such bonds, the St. Paul Chicago Railway Co., on June 29, 1869, made a contract with the relator, the Minnesota Railway Construction Co., whereby the latter company agreed to build and equip the railway from St. Paul to Winona, and, among other considerations therefor, the former company agreed to and did sell, transfer and assign to the latter all gifts, donations, bounties or aid, in any form or shape, which then had been or might thereafter be given to it, by any person, corporation, municipality or state, to aid in the construction of such railway, including the bonds which the town of Lake City had thus obligated itself to issue and deliver, and all claim, right or demand of the railway company to or for such bonds, against such town. The relator still owns the claim and demand so transferred to it.
The St. Paul Chicago Railway Co., acting through the relator, proceeded with the construction of the railway, and had the same completed, with the cars running thereon, for the entire distance from St. Paul to Winona, and had in all respects complied with the terms of the ordinance, and had become entitled to the delivery of the bonds, by January 1, 1872.
On February 26, 1872, the legislature, with the consent and *Page 410 
by the procurement of the inhabitants of the town of Lake City, passed an act entitled "An act to incorporate the city of Lake City," (Sp. Laws 1872, c. 15,) providing that all the district of country in the county of Wabasha, and state of Minnesota, contained within certain described limits "shall be a city by the name of Lake City, and the people now inhabiting, and those who shall hereafter inhabit, within the district of country herein described, shall be a municipal corporation by the name of Lake City," and conferring the usual powers of municipal corporations. All of the territory comprised in the city thus created (except such as includes part of the waters of Lake Pepin,) is included in township 111, and formed a part of the town of Lake City at the time of the passage and ratification of the ordinance before mentioned. Immediately upon the passage of the act, the new city was organized, and has ever since existed, with such territory and organization; and ever since the organization of the city, the town organization has been confined to what remained of its original territory after the city was thus carved out of it.
The act incorporating the city makes no provision whatever for the payment of any part of the debts or the assumption of any part of the obligations of the town of Lake City by the new city of Lake City, but is entirely silent on that subject, nor is there any general statute of the state, adjusting the debts or liabilities of the old town with the new city.
By an act of the legislature, approved March 6, 1873, (Sp. Laws 1873,c. 97,) it is provided "that the name of the township of Lake City, in the county of Wabasha, be and the same is hereby changed to the township of Lake," which name it still retains.
By the official assessment for the year 1876, the total valuation of taxable property in the city of Lake City is $1,072, 363, and in the town of Lake, $232,695.
The relator having, on its own behalf and that of the railway company, made a fruitless demand on the town and city, this proceeding was instituted to compel them to issue their *Page 411 
joint and several bonds to the relator, of the character and to the amount provided in the ordinance.
On the return-day of the alternative writ, motions were made by the respondents that the writ be quashed; and these being overruled, and the respondents having answered, the relator moved to strike out portions of the answer; and a motion was also made by respondents for a jury trial. The grounds of each of these motions are stated in the opinion.