LILLY ET AL. *v.* THE CITY OF INDIANAPOLIS.

[No. 18,019.    Filed March 9, 1898.]

MUNICIPAL CORPORATION. — *Appropriation for Entertainment of Convention.*—*Private Subscriptions.*—*Right of City to Unexpended Balance.*—Having been invested with special authority by the legislature, the common council of the city of Indianapolis appropriated $75,000.00 out of the treasury of the city for the purpose of defraying the legitimate expense in the preparation for the reception and entertainment of the twenty-seventh National Encampment of the Grand Army of the Republic. The ordinance appropriating the money created an "encampment committee" the members of which were vested with the power of disbursing the funds appropriated. Before the said ordinance was passed the president and secretary of the Commercial Club, an incorporated body, the primary object of which is to promote the business and commercial interests of the city, appeared before the finance committee of the common council, and represented that it would be impossible to secure private subscriptions in a sufficient sum, and stated that if the appropriation was made by the city, that such appropriation should only be drawn upon to make up any deficiency after the private subscriptions, of which the Commercial Club had charge, were entirely exhausted, and that any unexpended balance of the fund appropriated by the city should be turned into the city treasury. Of the $75,000 appropriated the "encampment committee" appointed by the city turned over $35,000 to the citizens' executive board upon an order signed by the chairman to the effect that it would be paid out for legitimate expenses only, and any unexpended balance remaining should be turned back into the city treasury. The citizens' executive board also had charge of, but kept in a separate account, the funds collected by the Commercial Club. After the encampment had been held, there remained a balance of $584.75 belonging

to the city's account, which, with some money belonging to the executive board, was turned over to the city treasurer. *Held*, that the city had no claim to any unexpended balance of funds which had been collected by the Commercial Club. *pp. 651-669.*

MUNICIPAL CORPORATION.—*Motive of Common Council.*—Courts will not inquire into the motive of the common council of a city in the enactment of an ordinance. *p. 665.*

From the Marion Circuit Court. *Reversed.*

*Albert Baker, Edward Daniels, Ferdinand Winter* and *Woollen & Woollen,* for appellants.

*J. B. Curtis, J. S. Duncan, C. W. Smith, H. H. Hornbrook* and *Ayers & Jones,* for appellee.

JORDAN, J.—The city of Indianapolis sued in the lower court, and the relief which she sought under her complaint in the action was an accounting to her from each and all of the defendants for certain sums of money which it was charged had been converted, which, in the aggregate, as alleged, amounted to $20,000.00, and judgment was demanded accordingly. The parties made defendants to the action were Eli Lilly, William Fortune, and the Commercial Club of Indianapolis; also John W. Murphy, August Keifer, Hugh H. Hanna, James L. Keach, Albert Sahm, Michael Steinhauer and Benjamin C. Shaw, these last named defendants having constituted the members of the encampment committee, created by said city, and invested with the duty and power of receiving and disbursing the money appropriated by said city of Indianapolis to defray the legitimate expenses that might be incurred by reason of the holding therein of the National Encampment of the Grand Army of the Republic in the year of 1893. The defendants, Lilly, Fortune, and the Commercial Club separately demurred to the complaint for insufficiency of facts. The defendants who, as stated, composed the encampment committee, jointly demurred for a like reason. The court

overruled the demurrers of Lilly and Fortune, and they each excepted. The demurrers of· the Commercial Club, and the other defendants were sustained, and judgment was rendered in favor of all the last-mentioned defendants against the city on their demurrers to the complaint. The defendants Fortune and Lilly each filed their separate answers to the complaint in five paragraphs, setting up affirmative matter as a defense. The plaintiff demurred to each paragraph of these answers, which demurrers the court sustained, over the exceptions of said defendants. Subsequently, upon the complaint· of Lilly and Fortune, the court ordered that the Commercial Club be again made a party to the action, and be required to interplead with the city of Indianapolis in respect to the claim which the latter made against Lilly and Fortune for the recovery of the money, as in the complaint set up and alleged. In obedience to this order of the court, the Commercial Club appeared by its attorneys, and filed a cross-complaint, making the city of Indianapolis, Lilly, and Fortune parties defendant thereto, and the club asserted in its cross-complaint the right to recover the money from Lilly and Fortune claimed by the city. The city of Indianapolis and Fortune and Lilly separately demurred to the cross-complaint for insufficiency of facts, and these demurrers were sustained; and, said club electing to stand by its cross-complaint, judgment was rendered against it in favor of each of the demurrants. Thereafter Fortune and Lilly both refused to plead further, and each elected to abide by his answer, thereupon the court rendered its judgment against them in favor of the city of Indianapolis for $5,537.50, being the principal and interest of the money, to wit, $5,000.00, which the plaintiff alleged these defendants had wrongfully converted. From this judgment Lilly and

Fortune have appealed to this court, and their sepa-
rate assignment of errors are based on the rulings of
the court in holding the complaint sufficient on de-
murrer as against them, and in sustaining the de-
murrers of the appellee, the city of Indianapolis, to
their separate answers. The Commercial Club has
also assigned cross-errors, based on the court's action
in sustaining the demurrers of the appellants Lilly
and Fortune, and that of the city of Indianapolis, to
its cross-complaint, and it prays that the judgment
rendered against it in favor of these parties be re-
versed. Appellants Lilly and Fortune each contend
that the complaint is not sufficient in facts to warrant
the judgment rendered against them in favor of the
appellee. The complaint is quite lengthy and is re-
plete with copies of papers and documents filed with,
and designed to be made parts thereof. The follow-
ing are substantially the essential facts as disclosed
by the complaint and its exhibits: The appellee, city
of Indianapolis, is a municipal corporation, and the
Commercial Club is a private incorporated body, sit-
uated in said city, and its primary object is to promote
the business and commercial interests of such city.
During the years 1892, 1893, and 1894, appellant Eli
Lilly was the president of this club, and his co-appel-
lant, William Fortune, was its secretary. It appears
that through the efforts made and steps taken by
this club, the Grand Army of the Republic was in-
duced to select the city of Indianapolis as the
place for holding its national encampment in 1893.
Among the several standing committees of the said
Commercial Club, was one which was denominated
and styled the "Committee on Assemblages," and it
was charged with the duty of securing political
parties and other organizations to hold their various
conventions or meetings at the city of Indianapolis,

and it was authorized to take the necessary steps to provide for the holding of such conventions, and for the entertainment of the visitors and members attending the same.  By reason of the committee on assemblages being charged with this duty, it appears to have taken the initiatory steps in regard to formulating plans and measures designed to carry into effect the entertainment of the visitors and the members of the Grand Army Encampment during the time of its session at said city.  Consequently, in September, 1892, this committee adopted a resolution requesting the appellant Lilly to become the chairman of a citizens' executive committee, which it was designed should assume the responsibility of carrying out the means and measures provided relative to said encampment.  In pursuance of this request, Lilly seems to have formulated a general plan for an organization of the citizens of the city, and on the 12th day of December, 1892, his plan or scheme pertaining to such purpose was submitted to a mass meeting composed of citizens of Indianapolis, and the plan prepared by him was approved and adopted by said meeting, and an executive board or committee was created, and its officers were to consist of a chairman, vice chairman, executive director, secretary, and treasurer.  Lilly was selected as its chairman, Fortune as executive director, and Albert Gall as its treasurer.    Other committees were appointed, among which was one on finance, and another on legislative matters, etc. Prior to November 1, 1891, the Commercial Club's committee on assemblages had received from subscriptions on the part of citizens certain sums of money donated as a fund to aid it in its proposed work, and after that date it received additional subscriptions to its fund.   Ten per cent. of the latter was payable without any conditions, and the remainder

was payable contingently in the event that either the National Convention of the Democratic party, in 1892, ·or the G. A. R. Encampment of 1893, be held at Indianapolis. Subsequently, a third subscription to the fund of the assemblage committee was obtained, which was to be applied to the expenses of the Twenty-seventh National Encampment of the G. A. R., to be held in Indianapolis in September, 1893. The complaint alleges that the total sum collected and received by the Commercial Club, through its committee on assemblages, upon these several subscriptions, amounted to over $50,000.00, of which $22,396.22 was paid and collected on the two last-mentioned subscriptions. On March 20, 1893, the common council of the city of Indianapolis, having been invested with special authority by the legislature to that effect, adopted an ordinance, which was approved by the mayor, whereby $75,000.00 was appropriated out of the money in the treasury of the city for the purpose of defraying the *legitimate expenses* arising out of the preparation for the reception and entertainment of the Twenty-seventh National Encampment of the Grand Army, and it was provided in the ordinance that the money so appropriated was to be paid out of the city treasury on warrants drawn by the city comptroller in favor of a committee composed of seven citzens, denominated the "Encampment Committee," which committee the ordinance created, and designated the persons who were to constitute the same; these being the defendants heretofore mentioned. This committee was vested with the power of disbursing the money appropriated by the city under this ordinance, and was charged with the duty of taking vouchers, showing the purpose to which it was applied. It is alleged in the complaint that, before the adoption of this ordinance, at a meeting of the finance

committee of the common council, appellants, Lilly and
Fortune, as president and secretary of the Commercial
Club, and as chairman and executive director of the
citizens executive board, appeared before said finance
committee, and stated to its members in substance, that
it would be impossible to secure by private subscrip-
tions a sum sufficient for the payment of the expenses
of the encampment, and that the city ought to make an
appropriation; that if it would do so, no part of such
appropriation would be used or drawn upon for the
encampment expenses until the whole amount sub-
scribed or to be subscribed to the fund of the com-
mittee on assemblages had been exhausted; and that
the city's appropriation should only be drawn upon
to make up any deficiency existing after said commit-
tee's fund had been exhausted; and further stated to
said committee that, in the event the city made an
appropriation, after all of the expenses of the encamp-
ment had been paid, any unexpended balance of the
fund appropriated by the city or of the funds sub-
scribed to the assemblage committee, together with
the proceeds arising out of the sale of lumber or other
materials, would be turned into the treasury of the
city.    It is alleged that, but for these statements and
promises so made by the defendants Lilly and For-
tune to this finance committee, the latter would have
reported the ordinance back to the council with the
recommendation that it be not passed, and no appro-
priation would have been made by the city.    That,
after these statements were made by Lilly and For-
tune to said committee, it adjourned without any ac-
tion, and thereafter it reported the ordinance back to
the common council, without making any recommen-
dation in regard to it, and it was, after being
amended in some particulars, passed by the common
council.    The further averment is made that the coun-

cil intended that the money appropriated by the ordinance should be supplementary to the subscription fund of the assemblage committee. Of the amount appropriated by the city under the ordinance, the encampment committee at different times received from the city treasury sums of money aggregating $35,000.00. It appears that this committee, instead of disbursing the money received by it from the city, finally decided that it would be less trouble and expense to turn over the money to the treasurer of the citizens' executive committee upon requisition of its chairman, and it formulated, for the purpose of transferring the money from its hands to said treasurer, to be used by Lilly as chairman of the executive board in making requisitions on the encampment committee, for the money, a blank form of which the following is a copy: "Indianapolis, Ind., ——, 1893. To Mr. ————, Chairman Encampment Committee. Dear Sir:—Out of seventy-five thousand dollars appropriated by the city of Indianapolis, * * * * please pay ——— dollars to Albert Gall, treasurer of the citizens' executive board in charge of the arrangements for the entertainment of said encampment, who will receipt therefor to you, and the disbursement of which, under my authority as chairman of the citizens' executive board, Twenty-seventh Encampment, G. A. R., I agree and pledge myself shall be only for legitimate expenses attending the preparation for the reception and entertainment of soldiers, sailors and marines attending said encampment; any unexpended balance of funds remaining in the hands of said treasurer after the settlement of all bills to be paid over to you by him for the purpose of turning it over into the city treasury. [Signed.] Eli Lilly, Chairman Citizens' Executive Board."

The following is the form of a receipt executed by

Gall when he received the money from the chairman of the encampment committee: "Received the above requested ———— from Mr. ————, chairman of the encampment committee, to whom I pledge myself to deliver at his request vouchers of all disbursements of this money. [Signed.] Albert Gall, Treasurer Citizens' Executive Board."

Appellant Lilly, it appears, as chairman of the executive board, by six requisitions of the above character, made by him at different times, and for different sums, transferred from the encampment committee into the hands of the treasurer of the citizens' executive board, the sum of $35,000.00, and no more, of the money appropriated by the city of Indianapolis. This money was kept by Gall, the treasurer, as a separate and distinct fund, as was likewise the money received by him from the subscriptions to the committee on assemblages. It is shown that of this amount of the city's funds placed in the hands of Gall, the sum of $34,415.25 was disbursed by him on proper orders, and paid out in satisfaction of the indebtedness of the encampment, for which disbursements he turned over vouchers to the encampment committee. After this disbursement there remained in the hands of Gall of the money received by him from the city's appropriation an unexpended balance of $584.75. This sum, together with $2,061.81 of the money said to have belonged to the citizens' executive board, amounting in all to $2,646.56, was paid into the treasury of the city of Indianapolis, leaving the net disbursement made from its funds to be $32,353.44. The complaint further alleges that the encampment committee did draw from the amount appropriated by the city $17,000.00 more than was needed for the legitimate expenses of said encampment for the following reasons: "That by action of said club, its assemblage

committee, said mass meeting, and the plan adopted
by said encampment committee, as set forth in their
said report, all as hereinbefore set forth, all of said
subscription funds and said appropriation were made
available for the expenses of the encampment upon
requisition of said Lilly as chairman of the said exec-
utive board.   That upon requisition from said Lilly
as such chairman sums were transferred at his pleas-
ure and discretion from said subscription fund to the
credit of said committee on assemblages, and paid to
the said Albert Gall as treasurer of said executive
board; and in like manner, upon like requisitions upon
said encampment committee, the said funds so appro-
priated by the city were, from time to time, paid over
by said last-named committee to said Gall as such
treasurer, and through him said moneys were dis-
bursed and paid out on encampment expenses upon
the authority of said Lilly and Fortune as chairman
and executive director of said executive board.   Said
encampment committee, upon requisitions and re-
ceipts as per form set forth in his report, so paid over
to said Gall, treasurer, said sum of thirty-five thou-
sand ($35,000.00) dollars so drawn by it from the city,
and the same was disbursed as appears by the said
committee reports and vouchers.   Said requisitions
were so drawn upon such respective funds and commit-
tees by said Lilly as chairman, and disbursed by said
Gall as said treasurer, by the warrant and authority
of said Lilly and Fortune as such chairman and exec-
utive director, respectively.   That when all the legiti-
mate expenses of the encampment committee had
been paid, there remained a balance in the treasury
of said club to the credit of said committee on assem-
blages the sum of twelve thousand ($12,000.00) dollars,
wrongfully withheld and unexpended for encamp-

ment expenses, contrary to the express representations, promises, and agreements to the said finance committee of the common council hereinbefore set forth, and of the sums which had been so transferred to said Gall, treasurer, from said subscription fund of the said assemblage committee, upon the authority and warrant of said Lilly and Fortune, there was paid to said Fortune the sum of five thousand ($5,000.00) dollars for services as executive director, which sum of five thousand dollars ($5,000.00) so paid was not a legitimate item of expense of said encampment, in that said services of said Fortune as executive director were voluntary and were fully rendered at the time of such payment, and without previous contract express or implied, that he receive compensation for such services, except in so far as such services were rendered by him as secretary of said club; and for such services the said Fortune was paid by said club a salary of three thousand ($3,000.00) dollars annually therefor. That by such unauthorized and wrongful payment to said Fortune the balance remaining in the custody of said Gall, treasurer, after payment of all legitimate expenses, was reduced in the sum of five thousand ($5,000.00) dollars, and was less by that sum than it should have been after payment of all legitimate expenses. That by the terms and conditions of the agreement entered into by the said encampment committee and said Lilly as chairman of said executive board, and by the terms and conditions of the requisitions of said chairman upon said encampment committee, as set forth in said committee's reports hereinbefore set forth, any unexpended balance of funds remaining in the hands of said Gall, as treasurer, after settlement of all bills, it was agreed and stipulated should be paid over to said encampment committee for the purpose of turning it into the city treasury,

That, except for said wrongful and unauthorized payment to said Fortune, said balance, after payment of all bills, remaining with said Gall, would have been five thousand ($5,000.00) dollars more than it actually was, and said encampment committee would have received five thousand ($5,000.00) dollars more from said Gall, treasurer, than it did, and would have paid back five thousand ($5,000.00) dollars more to the city than it did.    That by this wrongful withholding from the application of said subscription fund to the payment of the legitimate encampment expenses, as above set forth, and the wrongful payment to said Fortune of said sum of five thousand ($5,000.00) dollars, the city's said appropriation was wrongfully and illegally drawn upon in the sum of seventeen thousand ($17,000.00) dollars, to its damage and loss in said sum.    That by reason of the premises said encampment committee has committed a breach of its trust, in that it drew from said funds so appropriated a sum of seventeen thousand ($17,000.00) dollars more than was needed to supplement said subscription fund in payment of legitimate encampment expenses.    That said sum of seventeen thousand ($17,000.00) dollars was wrongfully withheld and misappropriated, and the defendant, the Commercial Club of Indianapolis, still withholds twelve thousand ($12,000.00) thereof, which it has converted to its own use, and said Fortune still holds and has converted to his own use said sum of ($5,000.00) dollars thereof." It is further averred that all of said funds were trust funds, as the defendants well knew, and they have been wrongfully diverted from the uses and trust for which they were appropriated with the full knowledge and consent of the defendants.    The prayer is for an accounting, and for a judgment as heretofore stated.

The first question presented for determination is, do

the facts embraced in the complaint make a showing sufficient to entitle the appellee, the City of Indianapolis, to demand that appellants, Lilly and Fortune, account for, and pay over to it, the $5,000.00, which amount, it is alleged, was by them wrongfully converted? Appellee, to recover at all, must do so, on the strength of its own title to the money in controversy, and not by reason of any weakness or infirmity that may exist in the title or right of the appellants to the same. Consequently, unless the facts establish the right or title of appellee to the funds, the wrongful conversion thereof, imputed to appellants, by the complaint, can be of no concern to appellee. There seem to have been three different organizations connected with the matter of the G. A. R. encampment out of which this controversy has arisen: First, the Commercial Club, a private incorporated body, of which appellants were respectively the president and secretary; second, the City of Indianapolis, a municipal corporation; third, an unincorporated body of citizens, who acted through its executive board, of which the appellant Lilly was chairman, and his co-appellant, Fortune, was the executive director. The Commercial Club had a standing committee known as the "Committee on Assemblages," and this committee seems to have had in its possession, or rather standing to its credit, as the representative of the club, money derived from the subscriptions mentioned, a large amount of which had been subscribed under the express stipulation that it was to be applied or used in defraying the expenses of the encampment. The appellee seems to have been represented by her encampment committee, appointed under the provisions of the appropriation ordinance. The facts as averred in the complaint show that the pleading, in its attempt to charge a cause of action against appellants, in

favor of the appellee, proceeds upon two theories: First, That the money appropriated by appellee's common council by the ordinance in controversy was to be supplementary to the funds derived from the Commercial Club, and arising out of the subscriptions to its committee on assemblages; and that this latter fund was the primary one out of which the expenses must be paid, and that the money appropriated by the city, could not be drawn upon to pay or discharge any of the encampment expenses until the funds received from the Commercial Club had been exhausted in the payment of such expenses. Second. That under the stipulations contained in the requisition used by Lilly as chairman of the executive board in transferring the money appropriated by the city of Indianapolis from the possession of the encampment committee, into the hands of the treasurer of the executive board, he thereby expressly agreed and contracted with the encampment committee that any and all unexpended funds in the hands of such treasurer, derived from all sources, after the payment and satisfaction of all of the legitimate expenses growing out of the holding of the encampment, should be turned over to said encampment committee for the purpose of being paid by it into the city treasury. The first theory apparently involved or had reference to the entire sum of $17,000.00 remaining as an unexpended balance to the credit of the Commercial Club's committee on assemblages before the $5,000.00 forming a part of that amount had been turned over to the treasurer of the executive board, and which subsequently was paid to appellant Fortune, on the order of Lilly. But in reality the appellee, under this theory, it would seem, only asserted its claim to the $12,000.00 which remained after the $5,000.00 had been turned over to the treasurer of said board. The second theory apparently embraced,

or had reference only to the $5,000.00 which had been placed in the hands of the treasurer of the executive board, and was an unexpended balance in his hands after all of the legitimate expenses of the encampment had been paid. The insistence of appellee upon the second theory is that, under the facts, this money belonged to it, and, as all of the legitimate encampment expenses had been paid, and inasmuch as Fortune's claim for services could not be classed as such, the money ought to have been turned over to the city, and the payment of it to the latter upon the order of his co-appellants was a wrongful conversion, for which the appellants should account to the appellee. The learned counsel for the appellee, in his brief, on this question says: "Under the agreement made by Lilly in his requisition for the city's money, it was understood that any balance of funds in the treasurer's hands should be returned to the city. Knowing this, and with this knowledge, he transferred $5,000.00 from the treasury of the Commercial Club to treasurer Gall, and put the $5,000.00 where it must be paid to the city of Indianapolis, as an unexpended balance of funds, if not used for legitimate expenses of the encampment." The trial court, it appears, decided adversely to appellee's contention upon the first theory of the complaint, and, in our opinion, rightfully adjudged that it was not entitled to the $12,000.00; but held in appellee's favor on the second theory, and decided that it was entitled to recover the amount alleged to have been wrongfully converted to the use of Fortune.

The court accepted the contention of counsel for appellee upon the second theory of the complaint as tenable, and, as it appeared that Lilly had transferred the $5,000.00 from the treasury of the Commercial Club to the treasury of the executive board, and as all

of the legitimate expenses of the encampment had been liquidated, the money in question must therefore be considered as an unexpended balance, and, under the stipulations in the requisitions heretofore set out, ought to have been turned into the treasury of the city of Indianapolis. Passing to the question for our determination, it is evident, in the light of the facts as we view them, that while it may be said that the fund arising out of appellee's contribution, and also the one derived from the private subscriptions to the committee on assemblages, were each dedicated to a common purpose, still each of these funds was separate and distinct, neither depending to any extent upon the other. There are no facts to justify the contention of counsel for appellee that the fund created by the latter's donation ought to be considered as one only to be drawn upon or used to supply a deficiency to meet the encampment expenses that might exist in the fund, arising out of the private subscriptions to the committee on assemblages. The statute on which the appropriation ordinance is founded simply empowered the common council of the city of Indianapolis to appropriate by an ordinance any sum not exceeding $75,000.00, for the legitimate expenses attending the preparation, etc., of the Twenty-seventh National Encampment of the Grand Army of the Republic to be held at or near Indianapolis. Acts 1893, p. 54. The statute further provides that the sum so appropriated may, by such ordinance, be made payable to any person or persons named therein, to be disbursed by them for said purpose, and accounted for under such regulations as such ordinance may prescribe. The ordinance, which is made an exhibit, makes no reference whatever to any other fund that may be donated, and in no manner indicates that the money appropriated thereunder must be used to

supply a deficiency on the part of any other fund
which might be assigned or set apart for the same
purpose. It ordains that the sum of $75,000.00 be
appropriated out of the funds of the treasury of the
city of Indianapolis for the purpose of defraying the
legitimate expenses of the encampment therein
named. It then designates or names seven persons,
who are to compose what is denominated the "En-
campment Committee," and directs the city comp-
troller to draw warrants on the city treasurer in favor
of this committee for the entire sum donated, provid-
ing, however, more specifically, that said official "shall
from time to time draw his warrant on the treasurer
in favor of said committee in such sums as the needs of
the committee shall require." The ordinance in-
vested this committee with the power of disbursing
the money appropriated, and imposed on it the duty
to take vouchers for all money paid out, showing the
purpose for which it was paid, and to file the same
with a report of all its doings with the city comp-
troller. Counsel for appellee place some stress in
support of the first theory of the complaint on the
averments that appellants appeared before the finance
committee of the common council, and made state-
ments substantially to the effect that the city ought
to make an appropriation, and, if it would do so, they
agreed that no part of the money so donated would be
drawn upon until the fund contributed to the Com-
mercial Club's committee on assemblages was ex-
hausted. It does not even appear that the common
council, before it passed the appropriating ordi-
nance, was informed in regard to these statements.
In fact, it is disclosed by the complaint that the
finance committee reported the ordinance back to
the council without any recommendation whatever,
and, · for aught appearing, the incentive which

prompted the council to adopt it was for the reason it
considered that the money donated thereby to the pur-
pose in view would ultimately conduce to the best
interests of the people of the city of Indianapolis.
The ordinance, in plain terms, speaks for itself, and
may be said to be solely a legislative act of the com-
mon council; therefore a judicial search for the mo-
tives which actuated that body in its enactment can
not be instituted, and the contention .of counsel for
appellee that these statements made by appellants to
the finance committee were what moved the council to
pass the ordinance are not in any manner available in
support of the alleged cause of action.  The rule
is well affirmed that courts will not institute an in-
quiry into the motives of the legislative department
in the enactment of laws.  *Wright* v. *Defrees,* 8 Ind.
298; *McCulloch* v. *State,* 11 Ind. 424; *Judah* v. *Trustees
of Vincennes University,* 16 Ind. 56.  This rule is as
applicable to legislative acts of municipal corpora-
tions as it is to those of the State's legislature.  1
Dillon Munic. Corp., section 311; Beach on Pub. Corp.,
section 516.

It is evident, we think, under the circumstances in
this case, the statements in controversy, are in no
sense legitimately entitled to any consideration in
support of either of the theories advanced by the com-
plaint.    There are no facts which can be said to
uphold any claim or title of the appellee to the
$17,000.00, or any part thereof, which remained unex-
pended in the treasury of the Commercial Club, stand-
ing to the credit of its committee on assemblages, and
out of which the amount in controversy under the
second theory of the complaint was carved, and trans-
ferred to the treasury of the executive committee, and,
then paid over to Fortune.

Appellee insists that the amount in controversy of

the money credited to the Commercial Club's committee on assemblages, having been placed in the treasury of the executive board by order of Lilly as chairman of the latter, and being there after all of the expenses of the encampment had been settled, became an unexpended balance, intended to be included in the stipulations of the requisitions signed by Lilly, whereby the money contributed by appellee was transferred from its encampment committee to the treasury of the executive board, and therefore, under the agreement between the encampment committee and Lilly, as chairman of the executive board, as constituted by these stipulations, the money became the property of the city, and ought to have been turned into its treasury. If this contention can be decided adversely to appellee, it is manifest that the question at issue between the parties is closed, for, in that event, appellants owe no duty to account to the former for the money alleged to have been misappropriated. It will be remembered that the facts show that all of the unexpended balance of the money donated by the appellee, and $2,000.00 and over in addition, were paid over to the treasurer of the city. The contention of counsel for appellee that the pledge of appellant Lilly, given in the requisition, obligated him to account for and pay over to the city not only the balance of its funds, but also embraced and bound him to turn over in like manner to the city, as its own money, all of the unexpended balance of the fund in the treasury of the executive board standing to the credit of the Commercial Club, is certainly not tenable. In order properly to interpret and ascertain what fund the agreement under the stipulations in the requisition referred to, and was intended to include, an examination of the facts which lead up to the drafting or formulation of the requisition will be helpful. It

appears from the official report made by the encampment committee in compliance with the ordinance, which report is made an exhibit herein, that at the first meeting of this committee a subcommittee was appointed from its members to consider and recommend some method by which the money appropriated by the city should be disbursed. It seems that the only question referred to the consideration of this subcommittee was that relating to the disbursement of the city's contribution. The subcommittee, after advising with the city attorney and comptroller recommended to the committee as a whole that the money be disbursed through the treasury of the executive board, and with this report it appears that the form of the requisition to be used by Lilly, being the one in question, was submitted, together with the method proposed for the disbursement of the money; and this report, together with this form of requisition, was approved and adopted by the encampment committee as an entirety. This action of the committee would indicate that there was no intention to exact from Lilly as chairman of the executive board anything more than a pledge that the money in the hands of the encampment committee upon which he made his requisition, under the arrangements, should be applied to the legitimate expenses of the encampment, and that the unexpended balance thereof remaining in the treasury of said board after such expenses had been liquidated should be turned back to the treasury of the city. The phrase "unexpended balance of funds" under the circumstances, when construed with and read in the light of the entire instrument in which it is contained, can be construed to mean and refer only to the unexpended balance of the money contributed by appellee. This was the only fund to which the requisition, by its express terms, professed to

make any reference, or to be in any respect applicable. But, were it conceded that it was the intention of the encampment committee and Lilly as chairman of the executive board, mutually to agree that the money remaining in the treasury of the board belonging to the Commercial Club should become the property of appellee, it would not avail the latter, for the reason that no authority is shown on the part of either Lilly or the committee to enter into any such agreement or contract. He, in drawing the requisition, professed to act solely as the chairman of the executive board, and, as such, had no power to agree to dispose of any of the money belonging to the club by turning it over to the city. He could no more exercise this right under the power which it appears he possessed than he could have assumed the authority to appropriate the money belonging to appellee to the benefit of the club. Neither Lilly nor the encampment committee is shown to have been invested with any authority to enter into any agreement which would affect the rights or title of the Commercial Club to the unexpended balance of its funds, after all of the expense growing out of the encampment had been paid. The ordinance was the letter of authority under which the encampment committee acted, and it imposed upon the latter no duty relative to any other fund than that created by the city's donation, and this was the only one with which this committee was entrusted. Upon any view of the question under the facts it is evident that the money contributed through the committee on assemblages to defray the expenses of the encampment was as much impressed with a trust for that purpose, as was the money contributed by appellee, and, if the latter could not be diverted from the common purpose to which both funds were dedicated, certainly the former, under the circumstances, must be con-

trolled by the same rule. But we need not further consider the question, for, when the facts set out in the complaint are read in the light of legal principles of universal recognition, it is clear that they do not sustain appellee's claim or title in the first instance to the money in controversy, and it therefore must fail in its demand that appellants be required to account to it for the alleged wrongful conversion thereof, consequently the demurrers of appellants to the complaint ought to have been sustained. An examination of the facts set up in the cross-complaint of the Commercial Club, on the face of the pleadings, establish its right to the money in dispute, and show that the claim thereto asserted by the city of Indianapolis is wholly unfounded. The demurrer of appellants and appellee to the cross-complaint ought to have been overruled. As to the right of appellant Fortune to retain, in whole or in part, the money received by him, over the claim of the cross-complainant, we do not decide. As to whether he is entitled to be reasonably remunerated for the services rendered under a contract, either express or implied, is a matter which ultimately must be determined under the issues joined under the cross-complaint. Fortune, apparently, however, was acting, in rendering the service for which he claims compensation, not merely as the secretary of the Commercial Club, but as the executive director of the citizens' executive committee, consequently the fact that he may have been at the same time under a salary for serving the Commercial Club as its secretary would not alone defeat him in his claim for compensation.

For the reason stated, the judgment in favor of appellee and against appellants, and also the judgment in favor of appellants and appellee against the Commercial Club, are each reversed, and the cause is

ordered to be remanded to the lower court, with directions to sustain each of the demurrers of appellants to the complaint, and to overrule each of the demurrers of appellants and appellee to the cross-complaint.