IN THE MATTER OF THE APPEAL FROM THE ORDER OF THE COUNTY BOARD OF MEEKER COUNTY MADE AUGUST 9, 1916, ORGANIZING SCHOOL DISTRICT NO. 58.

INDEPENDENT SCHOOL DISTRICT NO. 47 OF MEEKER COUNTY AND OTHERS v. MEEKER COUNTY.[1]

June 27, 1919.

No. 21,266.

**School district — detachment of territory — testimony of commissioners admissible.**

The board of county commissioners, on petition, detached certain territory from a school district formed in 1911 by two districts uniting. Upon appeal the order of the county board was reversed. It is *held*:

(1) Under the rules governing the trial of such appeals, the evidence did not warrant the court in finding that the board acted arbitrarily, unreasonably or against the best interests of the people in the territory affected, unless it was proper to receive and consider the testimony of two members of the county board, by whose affirmative vote the territory was detached, that they so voted because of the belief that the union of the two districts in 1911 was void and illegal.

(2) The union of the two districts was an accomplished fact, and the members of the county board and the judge of the district court were bound to consider the same as valid, as if all the formalities required by law in the consolidation of school districts had been complied with.

(3) The testimony of the two members of the county board was admissible and warranted the finding made by the trial court.

From an order of the board of county commissioners of Meeker county, granting a petition to form a new school district out of territory sit-

1Reported in 173 N. W. 850.

uate in district No. 47, Alfred C. Peterson and others, as members of the board of education of Independent Consolidated School District No. 47, and the school district, appealed to the district court for that county on the grounds that the county board had no jurisdiction to act, that it exceeded its jurisdiction, and that the action was against the best interests of the territory affected. The appeal was heard before Daly, J., who made findings and ordered judgment reversing the order of the county board. From the order denying its motion for amended findings or for a new trial, defendant appealed. Affirmed.

*Raymond H. Darl, F. E. Latham* and *C. A. Pidgeon,* for appellant.

*T. O. Gilbert* and *J. M. Freeman,* for respondents.


HOLT, J.

The board of county commissioners of Meeker county on August 9, 1916, detached certain territory from School District 47 and formed it into District 58. Upon appeal to the district court the board's order was reversed, the court finding that the board acted arbitrarily and in disregard of the best interest of the territory affected, and that the order works a manifest injustice to the people residing in the whole territory, particularly to those residing in what now remains of District 47. The petitioners for District 58 appeal.

The School District 47, as conducted since 1911, comprised a little over 11 sections of land, located substantially in a square, with the village of Dassel immediately west of the center line and in the southern part of the square. The five sections lying east of a line drawn north and south through the center of the territory comprise what was formed into District 58 by the action of the board. It appears that for some time prior to 1911 there had been a School District 58, embracing the same territory detached by the board in 1916. In it there was and now is an ordinary, comfortable, one room country district school house. In 1911 District 47 possessed a modern brick school building with adequate rooms and equipment, in which was conducted a full grade and high school with all the latest courses, such as domestic science, manual training, agriculture et cetera. An agitation was then started to induce District 58 to join or consolidate with 47. The result was that District 58 held a meeting, and by a majority of its voters determined to unite with

47. The two school houses are about one and a half miles apart by road. From that time on the officers of the county and of the school district mentioned treated the matter as if a legal consolidation had been fully and effectively carried out. So did the voters, and School District 47 was regarded as embracing what were before Districts 47 and 58. The school house in 58 was not thereafter used for school purposes.

Some time after the districts united, bonds were voted to erect a substantial addition to the school building in Dassel. This was done, so that now the school house contains 22 rooms. The school at Dassel was carried on, but the residents of the former District 58 became dissatisfied with the bus service and the increased taxation going with the maintenance of an up-to-date school, and, by unanimous petition, asked to be detached. A hearing was had before the board, at which both the officers of District 47 and the petitioners appeared personally and by counsel, with the result above stated. On the trial of the appeal in the district court the evidence covered a wide range. Considerable testimony from practical educators was introduced as to the advantages of a school of the kind maintained in District 47 over the one that is or can be conducted in 58; the taxable value of the property in the respective districts was proven; the manner in which the bus service had been carried on, and the condition of the roads were fully gone into; the location of the homes with reference to roads over which the bus could travel and the exposure of the children to the elements, while waiting for the bus at some distance from shelter to pick them up, were shown. It was also proven in the trial that two of the members of the county board voted against detaching District 58, and that two of the three who voted in favor of granting the petition did so chiefly on the ground that they were of the opinion that the union of the two districts in 1911 was illegal.

From the standpoint of the educational advantages there can be no reasonable doubt but that the best interest of the people in the whole territory affected will be subserved by keeping District 47 intact. And if the district court had had the power to try the matter de novo, or had had the right to exercise his own judgment as to the propriety of detaching or refusing to detach District 58, the correctness of his conclusion could not be questioned that judgment should be entered reversing the

action of the county board. But, according to the settled rule in this state, the scope of the court's inquiry is limited. The county board acted in a legislative capacity in detaching District 58. The court could not so act in determining the appeal. The limitation of the inquiry has been fully stated and discussed in the late cases of Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152; Hall v. Board of Co. Commrs. of Chippewa County, 140 Minn. 133, 167 N. W. 358; and Common School District No. 85 v. Renville County, 141 Minn. 300, 170 N. W. 216. It was within the province of the board of county commissioners to determine whether the educational advantages to be obtained in the Dassel school outweighed the dangers, difficulties and expense the people of District 58 would have to be subjected to in order to continue their relations with District 47. It was not within the province of the trial court so to do. The creation of school districts and changing their boundaries are purely legislative and administrative questions and problems of government which courts do not determine and do not interfere with or review, except as especially empowered. Under the view of the law above stated a majority of the court are of the opinion that, aside from the testimony of the members of the county board, received over the objections of the petitioners, the evidence did not warrant the court in reversing the order of the board.

Preliminary to considering the errors based upon the reception of the testimony of the members of the board, it may be stated that at the hearing before the board of county commissioners, as well as upon the trial in the court below, there appears to have been much contention over the status of School District 47, the petitioners claiming that the union in 1911 was illegal and void, and therefore they had an absolute right to be separated, regardless of other considerations. There may have been informality in the proceeding by which the two districts united, but for several years the people in the territory concerned treated the union as an accomplished fact, so did the school, county and state officials, and we think both the county board and the trial court were bound to regard the status of School District 47 as if the union in 1911 had been effected in accordance with all the formalities prescribed by law.

We then come to the question of the admissibility and effect of the testimony of the two members of the board who voted in favor of de-

taching District 58 because they believed the union of the two districts illegal.

In a collateral attack upon the order of the board, we are agreed that it would not be permissible for members to impeach the record, or the order, by showing that they voted under a mistake of law or fact. But on appeal from the order the attack is direct, and the scope of the inquiry goes to a consideration of the reasonableness of the order. Appellant contends that the board acts in a legislative capacity in changing school districts, hence the same rules as to admissibility of evidence as to the motives or reasons for their vote apply as do apply to members of a legislature. It is beyond question that legislators may not be called to impeach a law by showing that their vote in favor of its passage was induced by an erroneous opinion of the validity of that or any other law, or by a mistake of fact.

The analogy is not the same. When a law is passed by the requisite vote, the courts must accept it as valid, regardless of the motives or reasons that prompted those who voted for its passage, unless violative of some constitutional provision. But here the statute has given the court express authority to review the action of the board and determine whether it acted arbitrarily, unreasonably or fraudulently. The board's action was the result of the vote of the majority of the members thereof. Whenever the motive or reason for a person's act is a direct issue, he may, according to the rule generally accepted, testify thereto. We find that in this state, where the actions of boards or persons charged with the duty of determining assessments are for judicial review, the persons who acted or who knew on what theory action was taken have testified. The clerk of the board testified in City of Duluth v. Davidson, 97 Minn. 378, 107 N. W. 151. In State v. District Court of Ramsey County, 95 Minn. 503, 510, 104 N. W. 553, the members of the assessment board testified to their reasons for making the assessment. In State v. Judges Dist. Ct. Eleventh Judicial Dist. 51 Minn. 539, 53 N. W. 800, 55 N. W. 122, the paper book discloses that a member of the board making the assessment under review by the court, as well as the clerk of the board, testified as to the methods and the reasons for making the same. A majority of the court think the evidence of the two members of the boards admissible.

This is neither a collateral attack upon the order of the board, nor is

it a direct attack by independent suit, but it is a review of the order in the proceeding where it was entered, and is provided for by statute. There are authorities that persons acting as members of equalization or assessment boards may not be called to impeach their action in direct suits brought for the purpose of setting aside tax judgments. Boston & M. R. v. State, 76 N. H. 86, 79 Atl. 701, and Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. ed. 636. The majority considers that the principles stated in those decisions should not be extended to a review of the action of the board of county commissioners upon an appeal of the sort provided for in section 2677, G. S. 1913.

The evidence referred to being admissible, there can be but little doubt that the trial court could on the strength thereof readily find the order of the board unreasonable and arbitrary. For clearly the order would not have been made but for the erroneous theory upon which the two of the three members who recorded their vote in favor of the order proceeded. For this reason we think the learned trial court's conclusion should stand.

Order affirmed.


HALLAM, J. (concurring).

I concur.

My opinion is that the testimony of the members of the board was properly received and that, taking all the testimony into consideration, the finding of the trial court should be sustained. I have no opinion as to what the result would be if part of the testimony were eliminated.


BROWN, C. J. (dissenting).

I dissent.

A fruitful field of judicial investigation into legislative proceedings is opened up by the decision in this case to which I am unwilling to assent.

It is elementary law in this country that the legality and validity of legislative enactments and proceedings, in the absence of defects appearing on the face of the record, are conclusively presumed and judicial inquiry to the contrary is not permitted. The motives or reasons controlling the action of members of the legislative body cannot be challenged in the courts, nor the result of their deliberations set aside by judicial

decree on extraneous disclosures of mistake or misunderstanding of law or fact on their part. 2 Lewis-Sutherland, Stat. Const. § 496; State v. City of Lake City, 25 Minn. 404; Wright v. Defrees, 8 Ind. 298; People v. Shepard, 36 N. Y. 285; People v. McElroy, 72 Mich. 446, 40 N. W. 750, 2 L.R.A. 609; Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. ed. 1145. The rule applies to local municipal councils and boards properly clothed with the performance of legislative functions and duties, as well as to the state legislature. 2 McQuillin, Municipal Corp. § 703; Lilly v. City of Indianapolis, 149 Ind. 648, 49 N. E. 887; 1 Dillon, Municipal Corp. § 311 (5th Ed. § 580). It precludes inquiry into the motives of the legislative members, either by the state or at the suit of a private party. 2 Lewis-Sutherland, Stat. Const. § 496; Wright v. Defrees, 8 Ind. 298; McCulloch v. State, 11 Ind. 424. The attempt of the court in this case to distinguish between a direct and collateral attack finds no support in the authorities.

The matter of organizing or consolidating school districts, or setting off territory from an existing district, is purely legislative under the Constitution and laws of this state, and may safely be left to the legislative tribunals to which it is referred by law, subject to judicial interference only to the limited extent heretofore stated in our decisions. Hall v. Board of Co. Commrs. of Chippewa County, 140 Minn. 133, 167 N. W. 358. Such is the character of the proceeding involved in this case, and the decision of the court presents an extraneous judicial attack upon the order of the local board on the ground of an alleged misunderstanding by some of the members thereof in respect to the validity of a prior proceeding involving the same school district. The case comes clearly within the rule prohibiting judicial interference.

The tax and special assessment cases cited in the opinion of the court, involving as they do private rights and private interests, are not in point. The controversy in this proceeding involves public interests only, is wholly legislative in substance and results, to which all private rights are subordinate and must yield.

Justice Quinn joins in the above dissent.