The TOWN OF SCHERERVILLE, Indiana, Defendant-Appellant,

v.

Charles VAVRUS and Gary National Bank, as Trustee Under Trust Agreement Dated April 21, 1973, known as Trust Number P5267, Plaintiffs-Appellees.

No. 3–776A180.

Court of Appeals of Indiana, Third District.

May 16, 1979.

Rehearing Denied June 28, 1979.

Kenneth D. Reed, Hammond, for defendant-appellant.

Richard A. Mayer, Spangler, Jennings, Spangler & Dougherty, Gary, for plaintiffs-appellees.

HOFFMAN, Judge.

Defendant-appellant Town of Schererville, Indiana (Town) appeals from reversal at trial of the Town's Board of Trustees (Board) denial of a zoning reclassification to plaintiffs-appellees Charles Vavrus and Associates (Vavrus). The evidence disclosed the following circumstances: Appellee's parcel of real estate, located in Schererville, Indiana, was zoned R–3 multi-family residential which permitted use of the land for apartment buildings. Vavrus, on December 29, 1972, filed a petition with the Town for approval of its preliminary plans reclassifying the land to R–3 Planned Unit Develop-

ment (PUD).[1] The PUD classification would permit a higher density than the standard R–3 multi-family residential zoning. On January 2, 1973, at the public hearing for the reclassification request, the Town Plan Commission reviewed the preliminary plans submitted by Vavrus which revealed a proposed nine building apartment complex including picnic areas, parking, swimming pool and a clubhouse. Vavrus discussed the design and layout of its development with the Plan Commission and answered its questions regarding access roadways, fire hydrants, lights, sewers, and parking. At that same meeting, the Plan Commission voted to recommend approval of the reclassification to the Board. During its regular meeting on February 14, 1973, the Board voted unanimously against the recommendation and rejected the Vavrus reclassification petition. On February 19, 1974, appellee instituted suit in the Lake County Circuit Court seeking a declaratory judgment that the action of the Board in denying the petition be declared arbitrary and capricious and that the Board be ordered to approve the preliminary plans. After a bench trial, the court made and entered the following Special Findings of Fact and Conclusions of Law:

## SPECIAL FINDINGS OF FACT

"1. This Court has jurisdiction of the parties, the subject matter of this action and the power to hear and determine the issues presented for trial.

"2. Plaintiff is a professional land developer engaged mainly in the business of constructing multi-family apartment developments.

"3. Defendant is a municipal corporation organized as a civil Town un-der and pursuant to the Statutes of the State of Indiana, located in Lake County, Indiana. Defendant is governed by a four-member Board of Trustees and has organized and existing a seven-member Plan Commission under and pursuant to the laws of the State of Indiana and said defendant's Zoning Ordinance Number 490.

"4. Plaintiff is the owner of the real estate described in plaintiff's complaint, which property is located within the corporate boundaries of the defendant Town of Schererville, Indiana, in the Southeast quadrant of the U.S. Highway 30 and Austin Road.

"5. Said property is now and at all times relevant to this lawsuit was zoned and assigned district use classification and regulations as R–3 Multi-Family Residential under and pursuant to defendant Town's Master Plan, Zoning Ordinance Number 490 and official Zoning Map.

"6. The defendant Town's Zoning Ordinance Number 490 contains certain guidelines and standards for the changing of zoning classifications to Planned Unit Developments and said guidelines and standards are more specifically set forth on Pages 79 and 80 of the defendant Town's Zoning Ordinance Number 490, which was identified and admitted into evidence at the time of trial as plaintiff's exhibit 'A'.

"7. Prior to the 14th day of February, 1973, the plaintiff properly instituted and processed his petition for reclassification of the subject land from R–3 Multi-family Residential to R–3 Planned Unit Development

1. Traditional zoning has had the virtue of certainty and the handicap of rigidity. A designated zone authorized certain uses, and no others, absent a variance. While a rezoning into a more permissive class might accommodate a desirable use, it might also allow an undesirable one. In short, the zoning authority was unable to tailor a specific desirable development to a particular tract of land if it involved uses which might cut across a number of zone classifications—unless the tract were rezoned to accommodate the most liberal element. In contrast, the PUD achieves flexibility by permitting specific modifications of the customary zoning standards as applied to a particular parcel. *Lutz v. City of Longview* (1974), 83 Wash.2d 566, 520 P.2d 1374.

under defendant's Zoning Ordinance Number 490.

"8. A public hearing was conducted as required by law on the plaintiff's petition for a zoning reclassification of January 2, 1973, before the defendant Town's Plan Commission and proper notice was given of said meeting as required by Indiana law.

"9. On January 2, 1973, the defendant Town's Plan Commission found that the plaintiff had met all the requirements, criteria and standards contained in Sections 1, 2 and 3 of Article 18 of the defendant Town's Zoning Ordinance Number 490 and on the same date voted five in favor and none against (one member having abstained and one member having been absent) to approve the petition and recommend to the defendant Town's Board of Trustees that the subject land be reclassified from R–3 Multi-family Residential to R–3 Planned Unit Development.

"10. Prior to the 14th day of February, 1973, plaintiff stipulated and agreed to all requests and demands made by the defendant Town for public and utility improvements required to be constructed at his cost to service the subject land and to make such improvements accessible to and for the development of adjoining lands.

"11. Prior to the 14th day of February, 1973, plaintiff had done all things required by defendant Town's Zoning Ordinance Number 490, in order to seek the benefits of a reclassification under Article 18 of said Zoning Ordinance Number 490.

"12. On the 14th day of February, 1973, the defendant Town's Board of Trustees voted unanimously to deny and overrule the favorable recommendation of the defendant Town's Plan Commission and not to grant the petition of plaintiff to reclassify the subject land from R–3 Multi-family Residential to R–3 Planned Unit Development.

"13. The defendant Town's Board of Trustees in denying the plaintiff's petition, for reclassification of the subject land from R–3 Multi-family Residential to R–3 Planned Unit Development did not apply and follow the standards and criteria as contained in Sections 1, 2 and 3 of Article 18 of the defendant Town's Zoning Ordinance Number 490.

"14. Subsequent to the 14th day of February, 1973, the defendant Town's Board of Trustees did grant and approve a reclassification of another parcel of land to be developed by another developer from R–3 Multi-family Residential to R–3 Planned Unit Development, commonly known as Gomez-Kaluf Unit Development.

"15. Both the plaintiff's project and the Gomez-Kaluf project were basically the same with no apparent differences as to standards and criteria as set forth in the defendant Town's Zoning Ordinance Number 490.

"16. On the 14th day of February, 1973, the defendant Town, acting by and through its Board of Trustees did improperly, unfairly, arbitrarily, capriciously and discriminatorily deny the plaintiff's petition for a reclassification of the subject land from R–3 Multi-family Residential to R–3 Planned Unit Development and said denial does prevent the plaintiff the highest and best use of his property."

CONCLUSIONS OF LAW

"The court having made and entered its Special Findings of Fact, now concludes the law to be as follows:

"1. The Court has jurisdiction of the parties, the subject matter of this action, and the power to hear and decide the issues presented in this case.

"2. The law is with the plaintiff and against the defendant.

"3. Plaintiff has the right to use the subject land as contemplated and proposed in his application, preliminary plan and reclassification of the subject land from R–3 Multi-family Residential to R–3 Planned Unit Development as approved and recommended by the Town's Plan Commission and as denied by the defendant Town's Board of Trustees.

"4. Plaintiff is entitled to a Judgment ordering the defendant Town's Board of Trustees to grant the plaintiff's petition for such zoning reclassification and to permit further development and construction by the plaintiff on the subject land in accordance with the provisions contained in Article 18 of defendant Town's Zoning Ordinance Number 490 in effect on the 14th day of February, 1973."

▮ Appellant's first allegation of error is that the Plan Commission did not have jurisdiction to hold a public hearing on the reclassification petition because appellee failed to give adequate notice of its application for a reclassification. IC 1971, 18–7–5–44 (Burns Code Ed.) requires that all zoning amendments occurring after the adoption of a master plan be made according to the procedures set forth in IC 1971, 18–7–5–39 to 18–7–5–42 (Burns Code Ed.), inclusive. The pertinent statute, IC 1971, 18–7–5–39 provides as follows:

"Notice and hearing on adoption of master plan—Publication.—Prior to the adoption of a master plan, the commission shall give notice and hold a public hearing on the plan and a proposed ordinance for its enforcement.

"At least ten (10) days prior to the date set for hearing, the commission shall publish in a newspaper of general circulation in the city or county a notice of the time and place of hearing."

The record reveals that notice of a public hearing on Vavrus's reclassification petition was published in the Hammond Times on December 20, 1972, notifying the public of a hearing to be held on January 2, 1973, at 7:30 P.M. before the Schererville Plan Commission for the purpose of considering a petition for reclassification of the subject land (legal description omitted here) from R–3 to PUD.

Appellant contends that since the reclassification petition and the preliminary plans were filed with the Town Clerk a mere four days prior to the public hearing, notice of the hearing was of no use to the public because nothing was on file to examine and review until December 29, 1972. Insofar as the statute does not require a petition or preliminary plan be filed ten days prior to the public hearing, appellant's argument cannot be sustained. If the Legislature had intended to impose such a requirement, then it certainly would have included such in the wording of the statute. Appellant, in effect, is asking the court to read into the statute a requirement which simply is not there. However, the courts will not add something to a statute that the Legislature has purposely omitted. *Poyser v. Stangland* (1952), 230 Ind. 685, 106 N.E.2d 390; *Schwartzkopf v. State ex rel. Fettig* (1965), 246 Ind. 201, 204 N.E.2d 342; *Duda et al. v. New Prairie, etc., Corp., etc., et al.* (1967), 140 Ind.App. 528, 224 N.E.2d 327.

▮▮ Appellant next maintains that the trial court erred when it permitted inquiry into the motives behind the Board's denial of the preliminary plan. Appellee alleges that no error on this issue was preserved for appeal since Town counsel failed to object to the testimony of Town Trustee Dreesen concerning his prejudice against PUDs.

While it is true that Town counsel did not object to a question addressed to Dreesen whether he was prejudiced against PUDs, Town counsel did object when counsel for Vavrus asked whether Dreesen's prejudice against the Town's PUD ordinance was a substantial factor in his voting against the Vavrus PUD. The Town's objection was grounded on the fact that the court had previously ruled that motives and reasons for making a particular vote were inadmis-

sible. The court overruled the objection, and Dreesen admitted that his primary reason for voting against the Vavrus petition was his prejudice against the PUD ordinance. To predicate error in the admission of testimony, it is necessary that a timely and specific objection be made in the trial court. *Macauley v. Funk* (1977), Ind.App., 359 N.E.2d 611. The Town properly preserved its objection for review.

■ Regarding admission of testimony concerning the motives behind the Board's denial, it is well settled that the courts cannot inquire into the motives of members of a local legislative body when acting in a legislative capacity. *Gardiner v. City of Bluffton* (1909), 173 Ind. 454, 89 N.E. 853; *Schmidt v. City of Indianapolis* (1907), 168 Ind. 631, 80 N.E. 632; *Lilly et al. v. The City of Indianapolis* (1898), 149 Ind. 648, 49 N.E. 887. When a governing authority acts on a rezoning application, it exercises a legislative power. *Czech v. City of Blaine* (1977), Minn., 253 N.W.2d 272; *City of Atlanta v. McLennan* (1977), 240 Ga. 407, 240 S.E.2d 881; *Zenga v. Zebrowski* (1975), 170 Conn. 55, 364 A.2d 213. The question addressed to Dreesen called for his personal motives in voting against the PUD and it was error to inquire whether he was activated by motives other than consideration of proper zoning objectives.

■ Appellant urges that the trial court committed reversible error in determining that Vavrus was entitled to a change in the zoning classification of its land because another landowner had been granted a similar change. In *Hukle v. City of Kansas City* (1973), 212 Kan. 627, 512 P.2d 457, the landowners stressed that the city's refusal to rezone their property was inconsistent with other zoning actions granting apartment use in the area and therefore was discriminatory against them. This was the theory relied upon by the trial court in *Hukle* to overturn the city's action. The Supreme Court of Kansas rejected that theory and held that the record supported the board's refusal to rezone. The court noted that the trial court had substituted its judgment in a matter that was primarily for legislative policy.

In *Moyer v. Board of County Com'rs. of Lyon County* (1966), 197 Kan. 23, 415 P.2d 261, discriminatory action was charged against the zoning authority because it had rezoned one tract in the area of appellees' land but had denied appellees' request for like rezoning. The trial court reversed the judgment of the zoning authority and directed the requested rezoning. On appeal, the trial court was reversed on the grounds that it was within the discretion of the local legislative body whether to rezone or not. *See also, Orinda Homeowners Committee v. Board of Supervisors* (1970), 11 Cal.App.3d 768, 90 Cal.Rptr. 88 (fact that rezoned property is similar in nature to property which was not rezoned does not make the Board's rezoning unreasonable).

Therefore, the fact that the Board had approved the PUD of another developer in the area is irrelevant to the inquiry whether the Board acted arbitrarily when it denied the Vavrus PUD. All that the court may determine is whether some rational basis existed for the municipality's action. " 'Arbitrary or capricious action . . . means willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case; action taken without some basis which would lead a reasonable and honest man to such action.' " *Kelley et al. v. Walker et al.* (1974), 161 Ind.App. 591, at 593, 316 N.E.2d 695, at 696.

■ In the instant case, the Board's refusal to rezone was not unreasonable or arbitrary since the trustees considered the relevant factors of the zoning ordinance. The testimony of Trustees Parker, Dreesen, and Konish revealed that the Vavrus plan was not consistent with the comprehensive plan for the orderly development of the Town; that the Vavrus PUD did not promote the general welfare of the Town; that the PUD did not provide adequate safeguards for appraisals and value of adjacent property; and that the existing utilities, streets, and thoroughfares did not have an adequate capacity to absorb the additional

burden which would be created by the proposed PUD.[2]

▬▬▬ Insofar as the trial court substituted its judgment for that of the Board, the judgment must be reversed. It is the function of the Legislature and not the courts to weigh the factors involved and to fix the zoning classification. While there was evidence in the record that the Board considered factors other than those designated in the ordinance when it denied the Vavrus petition, that fact does not affect the result of this case because there was a rational basis for the Board's denial. The motives of a local legislative body in declining to amend its zoning ordinance are irrelevant to any inquiry concerning its reasonableness. If there is any rational basis for a zoning decision from the objective facts, the actual motive for the decision becomes immaterial. *Ensign Bickford Realty v. City Council, etc.* (1977), 68 Cal. App.3d 467, 137 Cal.Rptr. 304. The courts will pass the line that separates judicial from legislative authority if by any order, or in any mode, they assume to control the discretion with which municipal bodies are invested when deliberating upon the adoption or rejection of ordinances proposed for their adoption. *State ex rel. Plan Comm. v. LaPorte Sup. Ct.* (1973), 260 Ind. 587, 297 N.E.2d 814.[3]

Judgment reversed.

GARRARD, P. J. and CHIPMAN, P. J., participating by designation, concur.

2. Title XVIII—Planned Unit Development, Sec. 3 of Ordinance No. 490 provides: "The preliminary plan shall show the layout of the total area to be included in the proposed district and shall indicate and be accompanied by documentary evidence to the satisfaction of the Plan Commission.

"A. That the plan shall be consistent with the Comprehensive Plan for the orderly development of the Town and with the purpose of this ordinance to promote the general welfare of the Town;

"B. That the appropriate use and value of property adjacent to the area included in the plan will be safeguarded;

"C. That the capacity of existing or proposed utilities, streets and thoroughfares is adequate to absorb the additional burden created by the special use district;

"D. That the development will consist of a harmonious grouping of buildings or other structures, adequate service, parking and open spaces, planned as a single and common operating and maintenance unit, as applicable;

"E. That all buildings be served by a central sewage disposal system, public water supply and public utilities;

"F. That, if the development is to be carried out in progressive stages, each stage shall be so planned that the foregoing conditions and intent of the ordinance shall be fully complied with at the completion of any stage."

3. In order to reclassify land to PUD, it would have been necessary to amend the zoning map by ordinance. Ordinance No. 490, Title XVIII, Section 2.