Carl L. OGDEN and Janice C. Ogden; Phillip L. Offerman and Cynthia A. Offerman; Ronald C. Jarvis and Charles A. Jarvis; Brian H. Maze and Ann R. Maze; Norman W. Fosnaugh; Clarence M. Mann and Martha S. Mann; Marilyn Noah McGinnis, Appellants–Plaintiffs,

v.

PREMIER PROPERTIES, USA, INC.; The Common Council of the City of Evansville; Evansville Pavilion, LLC, Appellees–Defendants.

No. 82A01–0101–CV–14.

Court of Appeals of Indiana.

Sept. 20, 2001.

---

Leslie C. Shively, Christopher C. Wischer, Larry D. Jukes, Fine & Hatfield, A Professional Corporation, Evansville, IN, Attorneys for Appellants.

James D. Johnson, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorney for Appellees Premier Properties USA, Inc., and Evansville Pavilion, LLC.

John A. Hamilton, Barber, Hamilton & Shoulders, Evansville, IN, Attorney for Appellee Common Council of the City of Evansville.

## OPINION

KIRSCH, Judge.

After the Common Council of the City of Evansville ("City Council") approved a certain rezoning request, Carl L. Ogden, Janice C. Ogden, Phillip L. Offerman, Cynthia A. Offerman, Ronald C. Jarvis, Charles A. Jarvis, Brian H. Maze, Ann R. Maze, Norman W. Fosnaugh, Clarence M. Mann, Martha S. Mann, and Marilyn Noah

McGinnis ("Neighbors") filed suit against Premier Properties, USA, Inc. ("Developer"), the City Council, and multiple parties who owned the rezoned property in its entirety ("Landowners").[1] Neighbors appeal certain of the trial court's pre-trial orders, raising the following restated issues for our review:

I. Whether the trial court erred when it dismissed Neighbors' claim that a written covenant, which Developer introduced at the City Council meeting, was a use and development commitment subject to zoning laws.

II. Whether the trial court erred when it dismissed Neighbors' claim that the City Council illegally contracted away its power to zone the subject property.

III. Whether the trial court properly granted summary judgment to Developer and the City Council on Neighbors' claim that the City Council acted arbitrarily and capriciously when it adopted the ordinance that rezoned the subject property.

We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

On May 8, 2000, the City Council voted to adopt Ordinance No. R–99–34 ("Ordinance"), which rezoned from residential to commercial certain property located on the corner of Lloyd Expressway and Burkhardt Road. Attempts to rezone the property from residential to commercial began in 1996, when a developer filed a petition to rezone. The Area Plan Commission ("APC") recommended denial of the request to the City Council, and the City Council denied the rezoning petition, which action a trial court subsequently affirmed. In 1997, another petition to rezone the property was filed, but the City Council denied it in 1998. In 1999, Developer initiated a rezoning petition, seeking to rezone the property in order to construct a retail shopping facility. The APC recommended denial of the petition. Developer then amended its petition, and the APC again recommended denial to the City Council. Each rezoning petition included a use and development commitment ("UDC"), which placed restrictions and requirements on the proposed development.

On May 8, 2000, at a duly organized meeting, the City Council considered Developer's petition. At the meeting, Developer introduced a document titled "Covenant" that contained written commitments "in addition to the covenants set forth in the Use and Development Commitment[.]" *Record* at 824. The Covenant was intended to accommodate the concerns of the adjoining landowners and the City Council. For instance, Developer promised, among other things, to construct berms on two sides of the proposed facility, restrict hours of garbage disposal, and maintain landscaping. Developer also promised to construct improvements to the roads abutting the facility, including adding traffic lanes and turn lanes, and installing a traffic light. The commitments were conditioned upon the City Council approving the

1. Landowners subsequently sold their property to Evansville Pavilion, LLC ("Pavilion"), who, upon motion, was substituted for Landowners as a party-appellee on June 18, 2001. Counsel for Developer filed an appearance for Pavilion. However, Developer and City Council had already filed their respective ap-

pellee's briefs. Pavilion did not file an appellee's brief.

2. The parties presented oral argument on August 27, 2001, in Indianapolis, Indiana. We commend counsel on both their written and oral advocacy.

Developer's zoning request and were binding on Developer for twenty years. The restrictions in the Covenant were to run with the land in favor of all owners of real estate within a one-mile radius of the subject property. After hearing arguments from Developer and neighboring property owners, and receiving evidence concerning property values and traffic impact, the City Council voted in favor of the petition, adopting the rezoning Ordinance, which incorporated the UDC.[3] *Id.* at 305.

Thereafter, Neighbors filed a complaint, pursuant to IC 34–14–1–2, seeking a declaratory judgment that the Ordinance was void, naming as defendants in the action Developer, the City Council, and Landowners (collectively "Defendants"). *Id.* at 33–44. Neighbors' third amended complaint asserted four counts: Count I alleged that the Covenant that Developer introduced at the City Council meeting was actually a UDC, which was required to be submitted to the APC for review and recommendation prior to City Council consideration. Because the Covenant was not reviewed by the APC, Neighbors argued that the required statutory procedure was not followed and, consequently, the Ordinance was void. Count II alleged the existence of an illegal contract for zoning, based upon both the terms of the Covenant and the fact that certain members of the City Council met with Developer prior to the May 8 meeting and made statements indicating that they would pass the ordinance. Count III alleged that the rezoning constituted a taking of property. Lastly, Count IV alleged that the City Council acted arbitrarily and capriciously when it passed the Ordinance.

Upon Defendants' motions, the trial court dismissed with prejudice counts I, II and III of the Neighbors' third amended complaint under Ind. Trial Rule 12(B)(6) for failure to state a claim. Because the court had previously granted summary judgment as to count IV of the second amended complaint, it struck Count IV of the third amended complaint, as it was essentially identical to that which had already been dismissed via partial summary judgment. Neighbors appeal the dismissal of Counts I and II of the third amended complaint and the grant of summary judgment on Count IV of the second amended complaint.

## DISCUSSION AND DECISION

### I. Dismissal for Failure to State a Claim

Neighbors contend that the trial court erred in granting Defendants' motions to dismiss. A motion to dismiss tests the legal sufficiency of a complaint. *Prock v. Town of Danville,* 655 N.E.2d 553, 556 (Ind.Ct.App.1995), *trans. denied* (1996). In reviewing the dismissal of a complaint under T.R. 12(B)(6), the facts alleged in the complaint must be taken as true and only where it appears that under no set of facts could plaintiffs be granted relief is dismissal appropriate. *Id.* However, only well-pleaded material facts must be taken as admitted. *Id.* at 560 n. 9. A court should not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading. *Id.*

#### A. Developer's Covenant

Count I of Neighbors' complaint contends that the Covenant offered at the City Council meeting was actually a UDC subject to applicable zoning laws. The trial court disagreed, finding that the Covenant was not subject to the zoning proce-

---

**3.** The Mayor vetoed the Ordinance on May 16, 2000, but the City Council overruled his veto on May 22, 2000, and the Ordinance was then officially adopted. *Record* at 307.

dures applicable to UDCs. Consequently, it granted Defendants' motions to dismiss this count of Neighbors' complaint for failure to state a claim.

■ The City Council is the legislative body with the authority to adopt a zoning ordinance in the City of Evansville. *See* IC 36–7–4–601 (legislative body having jurisdiction over the geographic area described in zoning ordinance has exclusive authority to adopt zoning ordinance). Any petition for rezoning must be referred to the APC of Evansville and Vanderburgh County for consideration and recommendation before any final action by the City Council. *See* IC 36–7–4–608(b) (proposal not initiated by plan commission must be referred to commission for consideration and recommendation before legislative body takes any final action). The APC "may permit or require an owner of real estate to make a written commitment concerning the use or development" of the property that is subject to a petition for rezoning. IC 36–7–4–613(a). Such a commitment "shall be recorded" and takes effect upon the approval of the zoning related to the commitment. IC 36–7–4–613(b). According to IC 36–7–4–615(a), local ordinance establishes the procedures governing the creation, approval, modification, and termination of written commitments. In this case, Ordinance 15.153.10.158(I)(2) of the Code of Ordinances of the City of Evansville provides that the City Council cannot consider a UDC until the APC has considered it in its final form. *See Appellants' Brief* at 10. Here, Neighbors assert that the Covenant was actually a UDC, and local ordinance required APC review prior to City Council consideration. Because Developer presented the Covenant to the City Council without prior APC review, Neighbors argue that the Ordinance is void. We disagree.

Initially, we are not persuaded by Neighbors' argument that no authority exists under either state statute or local ordinance for the consideration of any type of written commitments in conjunction with a rezoning petition other than a UDC. *Appellants' Brief* at 11 and *Reply Brief* at 2. Both state statute and Evansville local ordinance recognize covenants as another type of written commitment restricting land use. IC 36–7–4–613(d), –615(d) (rezoning does not affect the validity of any covenant, easement, equitable servitude, or other land use restriction created in accordance with law); EVANSVILLE, IND., MUNICIPAL ORDINANCES § 15.153.01.004 (1989) (Evansville zoning code establishes minimum requirements and does not abrogate private agreements or covenants between parties which impose stricter requirements). Neighbors suggest that these statutes merely codify case law that holds that zoning does not affect existing covenants on the land. *See Suess v. Vogelgesang*, 151 Ind.App. 631, 643–44, 281 N.E.2d 536, 544 (1972) (zoning variance was not invalid because it conflicted with existing restrictive covenant, but variance did not relieve real estate from covenant). No case has so interpreted these sections; however, even if we assume that Neighbors' interpretation is correct, there is sufficient reason, independent of those statutes, for us to conclude that the zoning process permits written commitments besides UDCs.

Existing case law, namely *Prock*, undercuts Neighbors' argument that the Covenant must, by default, be a UDC because all written commitments are UDCs. In *Prock*, the court discussed, and effectively acknowledged, the existence of a written commitment other than a UDC, there called a "Host Community Agreement," between the Town of Danville and the property owner, Waste Management. *Prock*, 655 N.E.2d at 554–55, 560–61. Be-

cause *Prock* examined the Host Community Agreement in the context of a contract zoning challenge, the same claim as that which Neighbors raised in Count II of their Complaint, we discuss it more fully in the following section.

Furthermore, the Indiana Code imposes truthfulness requirements upon a developer who makes representations to the governing body during a rezoning request. IC 36–7–4–610.5 states in pertinent part:

> If, after adoption of the proposal, the legislative body finds that the proposal was adopted as a result of a person's material misrepresentation or omission of facts, the legislative body may adopt an ordinance to nullify any change in the zone maps that resulted from the misrepresentation or omission.

IC 36–7–4–610.5 thus grants the governing body, here the City Council, an ability to reverse any approval of an ordinance if it subsequently learns that the developer misrepresented or omitted facts to it. The statute does not distinguish between verbal and written representations made to the governing body.

Here, the Covenant constituted only a portion of the representations that Developer made to the City Council. Under Neighbors' position, only the verbal commitments and those in the UDC were permissible under the zoning statutes. We disagree and find that it would be senseless to require that developers make only verbal representations, but not written commitments, when the latter are more easily enforced. Indeed, it would discourage a developer from contractually binding itself to third parties, even if the contract might impose stricter requirements than those imposed by the relevant UDC.

■ Ultimately, we agree with Developer that UDCs and covenants simply are two "separate species of restriction on the development of real estate," each having a separate role in the zoning process. *Premier Properties' Brief* at 6. While the UDC, attached to a developer's petition, may adequately address the concerns of the governmental body voting on the proposed ordinance, concerns of individual citizens may still exist. Consequently, covenants are often drafted to appease the remonstrators' concerns. While a covenant may impose stricter conditions on the land use, and greater burdens on a developer, its existence is aimed to reduce opposition to the project, which presumably will work to the developer's benefit when presenting the planned rezoning to the governmental body that will vote on the matter.

■ Not only are covenants and UDCs created differently, but they are also enforced differently. If the requested rezoning is approved, the UDC is attached to, incorporated by, and recorded with the ordinance, and the APC retains the power to modify, enforce and terminate the UDC. *See* IC 36–7–4–613(a), (c); IC 36–7–4–1014(b)(3). In contrast, a covenant does not become law and is only enforceable by the designated beneficiaries of the restrictions. As one recognized zoning authority noted:

> [Z]oning is entirely divorced in concept, creation, enforcement, and administration from restrictions arising out of agreements between private parties who, in the exercise of their constitutional right of freedom of contract, can impose whatever lawful restrictions upon the use of their lands that they deem advantageous or desirable. Zoning restrictions and restrictions imposed by private covenants are independent controls upon the use of land, the one imposed by the municipality for the public welfare, the other privately imposed for private benefit.

5 Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning and Planning § 57.02 at 57–3 (2001).

■ Clearly, there is some overlap between the two types of commitments, as each serves the purpose of placing restrictions or conditioning the use of the subject real estate. In fact, one or more of the same restrictions may appear in both documents. However, even though a certain restriction or condition could appear in a UDC, it is not required to appear in a UDC. Rather, it is a matter of discretion. The governmental entity, here the City Council, retained the ability to reject the UDC as proposed. Indeed, it could have required Developer to amend its petition and UDC and obtain another APC review before returning to the City Council for vote. It chose not to do so. Zoning is a legislative process, and, consequently, is a political process. *See Town of Schererville v. Vavrus,* 180 Ind.App. 500, 507, 389 N.E.2d 346, 351 (1979) (when a governing authority acts on a rezoning application, it exercises a legislative power). So long as the decision of the City Council was not arbitrary and capricious, we will not intervene. *Bryant v. County Council of Lake County,* 720 N.E.2d 1, 5 (Ind.Ct.App.1999), *trans. denied* (2000).

### B. Contract Zoning

Neighbors contend that by virtue of certain alleged verbal agreements made by City Council members and/or the written Covenant, the City Council entered into a contract for zoning with Developer. The trial court rejected the claim, finding that no contract between Developer and the City Council existed and dismissed it under T.R. 12(B)(6).

■ In contract zoning, the zoning authority agrees to rezone and the developer agrees to conditions that would otherwise not be applicable to his land. 5 Ziegler,

*supra* § 57.05 at 57–32. The use of private covenants for leverage in the process of negotiating permission for development "may pose pitfalls for the developer and the municipality" due to the potential of running afoul of contract zoning, held to be illegal in some states. *Id.* at 57–31. Although Indiana has not expressly decided whether contracts for zoning are illegal, this court in *Prock* reviewed authority from other jurisdictions and suggested the improper nature of such contracts. *Prock,* 655 N.E.2d at 559 (citing *Ford Leasing Dev. Co. v. Bd. of County Comm'rs,* 186 Colo. 418, 425, 528 P.2d 237, 240 (1974) (recognizing that the general rule in most states is that contract zoning is illegal as an ultra vires bargaining away of the police power); *Hedrich v. Village of Niles,* 112 Ill.App.2d 68, 77–78, 250 N.E.2d 791, 795 (1969) (zoning ordinances should not be subject to bargaining or contract)).

In *Prock,* the Town Council for Danville adopted an ordinance that annexed and zoned certain property allowing Waste Management to use it as a landfill. Thereafter, the Town of Danville and Waste Management entered into a Host Community Agreement ("HCA") that required Waste Management to do certain things, such as maintain roads and cooperate in the development of recreational facilities. Waste Management also agreed to make three payments of $50,000 to Danville's Chamber of Commerce. In return, the Town agreed, among other things, to provide municipal water and sewer services and support the use of the landfill, including any future attempts to secure permits for expansion of the landfill. Plaintiffs, who owned land adjoining the subject property, filed a complaint for declaratory judgment, alleging, in part, that the HCA constituted an illegal contract for zoning. Waste Management filed a motion to dis-

miss the complaint, which the trial court granted.

The *Prock* court defined a contract for zoning as: "'[A]n agreement between a municipality and another party in which the municipality's consideration consists of either a promise to zone property in a requested manner or the actual act of zoning the property in that manner[.]'" *Id.* (quoting *Dacy v. Village of Ruidoso,* 114 N.M. 699, 702, 845 P.2d 793, 796 (1992)). The court found that the agreement in question (HCA) was not a contract for zoning because it did not "contain a promise by the Town that it would zone the property in any particular way." *Id.* at 555, 560, 655 N.E.2d 553.

■ Here, Neighbors allege that individual members of the City Council privately met with Developer prior to the May 8 meeting to negotiate under what terms they would approve the proposed rezoning amendment. Neighbors assert that at these meetings Developer extended promises to the City Council members to make improvements to the City of Evansville, as well as other promises not related to the rezoning proposal. According to Neighbors' complaint, many of the promises were memorialized in the Covenant that was introduced at the May 8 meeting. All the commitments in the Covenant were conditioned upon the City Council approving the Developer's zoning request, and the Covenant specifically states that it was drafted to induce the City Council to approve the zoning request. Neighbors assert that a majority of City Council members accepted Developer's promises either by promising to vote in favor of the Ordinance, or by actually so voting. Neighbors contend that the City Council thereby impermissibly contracted away its power to zone the property. We disagree.

■ First, boards and commissions speak or act officially only through the minutes and records at duly organized meetings. *Scott v. City of Seymour,* 659 N.E.2d 585, 590 (Ind.Ct.App.1995). Therefore, any alleged verbal promises by a council member outside a duly organized meeting cannot contractually bind the council as a matter of law. *See Jones v. State ex rel. Indiana Livestock Sanitary Bd.,* 240 Ind. 230, 237, 163 N.E.2d 605, 608 (1960) (actions of individual members of board or commission outside a meeting cannot be substituted for actions at duly constituted meeting or for minutes thereof). We agree with the City Council that "[t]hese principles simply reflect the nature of the legislative process. There is nothing illegal about an individual legislator meeting with citizens, lobbyists, or businessmen prior to voting on an issue[.]" *City Council's Brief* at 10. Consequently, any promises made or not made in alleged meetings with Developer are irrelevant.

Second, the facts of this case present a weaker case for contract zoning than those presented in *Prock.* Even though in *Prock* the Town was a party to the agreement with Waste Management and agreed to support any future expansion efforts, the court nevertheless concluded that the Town did not barter away its decision-making authority. *Prock,* 655 N.E.2d at 560. Here, the City Council was not a party to the Covenant, which did not bind the City Council to zone the property in any particular way.

Third, as in *Prock,* this rezoning was approved before the Covenant became effective. In *Prock,* the HCA was signed after the ordinance was passed; hence, the court found, the Town Council could not have contracted away its power to zone because the zoning was already completed before the HCA was executed. Here, a provision in the Covenant states that it would become effective five days after the passing of the ordinance. Consequently,

the City Council could not have bargained away its power to zone by virtue of the Covenant.

## II. Summary Judgment on Count IV

### A. Standard of Review

Rezoning is a legislative process. *Bryant,* 720 N.E.2d at 4; *see also Town of Schererville,* 180 Ind.App. at 507, 389 N.E.2d at 351 (when a governing authority acts on rezoning application, it exercises legislative power). The courts may reverse a county's decision regarding rezoning only if it is arbitrary or capricious; that is, the county has taken willful and unreasonable action without consideration and in disregard of the facts or circumstances of the case. *Bryant,* 720 N.E.2d at 5. We will not intervene in the local legislative process as long as it is supported by some rational basis. *Id. See also Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1061 (Ind.1992) (a reviewing court may vacate a board or commission's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by it are clearly erroneous); *Hills v. Area Plan Comm'n of Vermillion County,* 416 N.E.2d 456, 461 (Ind.Ct.App.1981) (as long as a decision is reasonable, not arbitrary and capricious, the discretion of the Council, unless abused, will not be disturbed).

In Count IV of their second amended complaint, Neighbors asserted that the City Council acted arbitrarily and capriciously when it approved the Ordinance. Developer and the City Council successfully moved for summary judgment on this claim. Neighbors now assert that the trial court erred in granting the motions because questions of fact exist as to whether the City Council acted arbitrarily and capriciously.

On summary judgment, this court applies the same standard as the trial court. *Bryant,* 720 N.E.2d at 5. We must determine whether there is a genuine issue of material fact and whether the trial court correctly applied the law. *Id.* at 5–6. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 6. Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.* Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. *Id.* A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Id.*

In the present case, this court must determine whether any genuine issues of material fact exist on the question of whether there was a rational basis for the City Council's actions.

### B. Adoption of Ordinance

" 'Arbitrary or capricious action . . . means willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case; action taken without some basis which would lead a reasonable and honest man to such action.' " *Town of Schererville,* 180 Ind.App. at 508, 389 N.E.2d at 351 (quoting *Kelley v. Walker,* 161 Ind.App. 591, 593, 316 N.E.2d 695, 696 (1974)).

IC 36–7–4–603 lists five criteria that are to be considered in a petition for rezoning:

In preparing and considering proposals under the 600 series, the plan commis-

sion and the legislative body shall pay reasonable regard to:

(1) the comprehensive plan;

(2) current conditions and the character of current structures and uses in each district;

(3) the most desirable use for which the land in each district is adapted;

(4) the conservation of property values throughout the jurisdiction; and

(5) responsible development and growth.

*See also* EVANSVILLE, IND., MUNICIPAL ORDI-NANCES § 15.153.10.159 (1989) (same).

 Here, during the lengthy discussion on the petition, the City Council entertained testimony from individuals both in favor of and opposed to the proposed rezoning. The attorney for Developer reviewed in detail the terms of the Covenant, and elaborated on "the quality of this development itself, the quality of protection that [Developer] has offered for the neighbors, the quality of the road improvements, ... as well as the quality of the jobs and revenue that this project will bring to the City of Evansville." *Record* at 327. The City Council also received verbal and written testimony by a real estate appraiser, who stated that the highest and best use for the property was retail development, as the land was no longer suitable for residential purposes. The appraiser further stated that the proposed retail development would not have a detrimental effect on surrounding property values. Additionally, an engineering firm conducted a traffic study and concluded that the proposed commercial facility would not have a negative impact upon traffic in the surrounding areas, and, in fact, traffic would be less than that seen if residential buildings, especially apartments, were constructed on the property. Letters from two additional engineering firms supported those findings.

One member of the City Council expressed concern that the proposal did not conform to the comprehensive plan. In response, another City Council member explained that the master plan was only a guide and not a binding document, remarking that, in any event, the plan "was out the window for that corner at Lloyd and Burkhardt" after certain other development was approved in the area. *Record* at 378–79.

Neighbors maintain that a genuine issue of material fact exists as to whether there was a rational basis for the City Council's decision in light of the following "unrefuted evidence:" (1) the requested classification was not in compliance with the comprehensive land use plan, which the City Council had adopted; (2) there had been no substantial change in the surrounding land uses or structures from the period of 1996, when the petition to rezone was first initiated, to 2000, when it was approved; (3) the APC denied substantially similar petitions to rezone this property on four prior occasions and the City Council denied substantially similar requests to rezone this property on two prior occasions; (4) five of the six members of the City Council that voted to approve this petition, voted to deny the similar requests in 1996 and 1998; and (5) in 1997, a trial court validated the City Council's denial of one of the rezoning requests. *Appellants' Brief* at 17–18.

As stated previously, the comprehensive plan was a guide only. Thus, the City Council's deviation from it does not, standing alone, support the allegation of arbitrary and capricious action, especially in light of the other evidence presented to the City Council. Neighbors' remaining four assertions concern the City Council's treatment of prior petitions to rezone this property, namely, that they were denied,

while the current one, similar in nature, was approved, suggesting that the City Council acted arbitrarily and capriciously in making this complete turnaround in position. However, the relevant inquiry is not how the Council treated past petitions, but whether the City Council had a reasonable basis for its decision in the present case. *See Indiana Dep't of Natural Res. v. Peabody Coal Co.,* 654 N.E.2d 289, 294 (Ind.Ct.App.1995) (question is not whether DNR acted arbitrarily and capriciously because it rendered a ruling that was inconsistent with other rulings; rather, relevant inquiry is whether there was a reasonable basis for DNR's action in present case); *see also Town of Schererville,* 180 Ind.App. at 508, 389 N.E.2d at 351 (fact that zoning board had approved a reclassification for another developer was irrelevant to whether board acted arbitrarily in denying instant petition to rezone).

Although the various facts upon which Neighbors rely to oppose summary judgment do indicate the controversial history of this rezoning ordinance, they do not readily identify any factual dispute as to whether the City Council acted with a rational basis when it passed the Ordinance.

Affirmed.

BAILEY, J., and BROOK, J., concur.