BOARD OF COMMISSIONERS OF THE COUNTY OF VANDERBURGH, Appellant–Defendant,

v.

THREE I PROPERTIES, Gerald and Ellen McKinley, James and Ronda Anderson, and Helen P. and Kenneth R. Rickhard, Appellees–Plaintiffs.

No. 87A04–0208–CV–369.

Court of Appeals of Indiana.

May 8, 2003.

Robert R. Faulkner, Evansville, IN, Attorney for Appellant.

Leslie C. Shively, Shively & Associates, Evansville, IN, Attorney for Appellees, Three I Properties, Gerald and Ellen McKinley, and James and Ronda Anderson.

Thomas J. Kimpel, Douglas A. Welp, Bamberger, Foreman, Oswald & Hahn, LLP, Evansville, IN, Attorneys for Appellees, Helen P. and Kenneth R. Rickard.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Board of Commissioners of Vanderburgh County (Board), appeals the trial court's reversal of its legislative determination and grant of partial summary judgment in favor of Appellees–Plaintiffs, Three I Properties (Three I), Gerald and Ellen McKinley, James and Ronda Anderson, and Helen and Kenneth Rickard [1] (collectively Appellees–Plaintiffs).

We reverse.

### ISSUE

The Board presents two issues for appeal, which we consolidate and restate as follows: whether the trial court erred in granting partial summary judgment in favor of Appellees–Plaintiffs.

### FACTS AND PROCEDURAL HISTORY

On December 18, 2000, the Board approved petitions to rezone real estate owned by Three I located on the northeast and southeast corners of the intersection of U.S. 41 and Boonville–New Harmony Road. U.S. 41 runs north and south and Boonville–New Harmony Road runs east and west. The property was rezoned from agricultural (AG) and residential (R–1) to commercial (C–4), and consisted of approximately ten acres.

Thereafter, Appellees–Plaintiffs filed three additional petitions to rezone property immediately adjacent to and east of the property rezoned on December 18, 2000. Two of the petitions pertained to property north of Boonville–New Harmony Road

1. The Board's Notice of Appeal was filed with the clerk of this court on July 30, 2002. On October 27, 2002, the trial court granted the Rickards' motion to intervene. Based on the trial court's grant of intervention, an appearance on behalf of the Rickards was filed with the clerk of this court on November 12, 2002. First, we find that the trial court did not have jurisdiction to rule on a motion to intervene since a Notice of Appeal had been filed with the clerk of this court on July 30, 2002. Also, pursuant to Appellate Rule 16(B), all parties participating in an appeal shall file an appearance with the clerk of this court within thirty days after the filing of the first Appellant's Case Summary or contemporaneously with the first document filed by the appearing party, whichever comes first. Consequently, the Rickards' appearance is untimely. Nevertheless, because the Rickards' argument on appeal is substantially similar to that of the other Appellees–Plaintiffs, we hereby grant the Rickards' motion to intervene and allow them to proceed as Appellees in this case.

and the other petition pertained to property south of Boonville–New Harmony Road. Approval of the three petitions would have extended C–4 zoning east towards Old State Road, which runs north and south and intersects with Boonville–New Harmony Road.

Before the Board votes on rezoning petitions, the petitions are heard by the Area Plan Commission (APC) at a public hearing. On April 4, 2001, at the public hearing of the three additional rezoning petitions, the APC was presented with a petition signed by approximately forty area families who opposed the three petitions. Despite the remonstrance, the APC recommended approval of all three petitions to the Board.

On April 16, 2001, the three petitions were presented to the Board for consideration during their monthly meeting. Several remonstrators appeared at the meeting to voice concerns about the rezoning. The Board denied all three petitions.

Sometime within the months following the April 16, 2001 meeting, Appellees–Plaintiffs submitted the two rezoning petitions (VC–17–2001 and VC 18–2001) at issue. Although these petitions involved much of the same land as the three petitions denied in April of 2001, the amount of property to be rezoned was reduced to exclude property along Old State Road. In addition, the petitions were subject to a Use and Development Commitment (UDC) that included several new conditions and commitments resulting from negotiations with the remonstrators of the April 16, 2001 meeting.

On December 5, 2001, the APC heard the petitions and recommended approval to the Board. On December 17, 2001, the

Board heard the two petitions at its monthly meeting. The Board denied both petitions. Thereafter, Appellees–Plaintiffs filed a complaint seeking declaratory judgment in the Vanderburgh County Superior Court. Subsequently, Appellees–Plaintiffs moved the Vanderburgh County Superior Court for partial summary judgment. A few days later, the venue was changed to the Warrick County Superior Court. On April 25, 2002, the Board filed its brief in response to Appellees–Plaintiffs' Motion for Partial Summary Judgment, and also filed their Motion for Summary Judgment along with supporting materials.

On July 22, 2002, the trial court entered its thirty-two page Findings of Fact and Conclusions of Law. The trial court's Findings of Fact and Conclusions of Law relevant to the case at bar, along with its Judgment, are as follows: [2]

### FINDINGS OF FACT

1. The facts of this case are virtually undisputed.

2. At all times material herein [Appellees–Plaintiffs], Gerald and Ellen McKinley, ... and James and Ronda Anderson ... were the owners of certain real estate located in Vanderburgh County, Indiana, more commonly referred to as 12920 Old State Road and 12900 Old State Road.

3. At all times material herein ... [Three I] ... was the owner of certain commercial real estate located at the northeast and southeast corners of the intersection formed by U.S. 41 and Boonville–New Harmony Road in Vanderburgh County, Indiana. Three I also had an equitable interest in the real estate owned by [other Appellees–Plaintiffs] and other landowners in the vicini-

---

**2.** The trial court's findings include a substantial amount of information relating to the history of Appellees–Plaintiffs' attempts to rezone the subject parcels of land. We have included a summary of prior rezoning peti-

tions and omitted findings that are not directly related to the Board's December 17, 2001 denial of Appellees–Plaintiffs' rezoning petitions at issue here.

ty of U.S. 41 and Boonville–New Harmony Road and Old State Road by virtue of a certain real estate contract . . .

4. [Board] . . . is the executive and legislative body of Vanderburgh County which, among other duties, is charged with the responsibility for final decisions regarding rezoning requests in Vanderburgh County outside of the corporate limits of the City of Evansville and the Town of Darmstadt.

5. The properties mentioned herein are within the rezoning jurisdiction of the [Board] and lie in the area bounded on the west by U.S. Highway 41 north and on the east by Old State Road, and lie north and south of Boonville–New Harmony Road, in Vanderburgh County, Indiana.

. . . .

26. Subsequent to the April 16, 2001 denial of the rezoning, [Appellees–Plaintiffs] entered into a compromise which resulted in withdrawal of the Remonstrance ( [APC] *Minutes of December 5, 2001* ) and the filing of the rezoning petitions which are the subject of this action.

. . . .

27. Sometime after the meeting of the [Board] on April 16, 2001, [Appellees–Plaintiffs] submitted two (2) new rezoning petitions (VC–17–2001 & VC–18–2001) which are the subject of this cause of action.

28. These petitions, like the first rezoning petitions, were subject to a[UDC] containing many of the same original conditions but included new conditions and commitments resulting from negotiations with the remonstrators who had appeared at the April 16, 2001 meeting of the [Board] which eliminated fifty-two (52) commercial uses for the property. (citation omitted).

29. **Both of these rezonings abut, primarily to the east, the property zoned C–4 on December 18, 2000 and would expand commercial development farther east toward, but not to, Old State Road.** (emphasis in original) (citation omitted).

30. These petitions eliminated the real estate along Old State Road which was included in the petitions heard by the [Board] on April 16, 2001. (footnote omitted) (citation omitted).

31. These rezonings were placed on the [Board's] agenda for its monthly zoning hearing for first reading on November 19, 2001, which the [Board] passed on first reading. (citation omitted).

. . . .

36. The [APC] recommended approval of both petitions with 10 affirmative votes, 2 abstentions and no dissenting votes (*Minutes of the APC Meeting of December 5, 2001* ).

. . . .

38. The subject rezoning petitions came before the [Board] for final action on December 17, 2001. Unless otherwise noted, the facts hereinafter are from the Minutes of the [Board's] Rezoning Meeting of December 17, 2001. The evidence presented by the parties did not disclose what, if any, other documents may have been in the possession of the [Board]. Therefore, the Court considers the designated evidence that was referred to in the Minutes of the [Board's] meeting at the time of their vote.

39. There was no evidence in the Minutes that any [commissioner] of the [Board] made a site visit to the property nor was any supporting evidence from the prior rezoning in December 2000 and the failed rezonings placed in evidence at the meeting, other than general references to the [Board's] prior actions.

40. At the meeting, [Appellees–Plaintiffs'] counsel discussed a[UDC] that contained written commitments to ac-

commodate the concerns of the adjoining landowners. For instance, [Appellees–Plaintiffs] promised to eliminate fifty-two (52) commercial uses, committed to the Traffic Impact Study, installation of buffers, and requirements and limitations on site improvements. The commitment was conditioned upon the [Board] approving the [Appellees–Plaintiffs'] zoning requests and stated it "shall run in favor of the [APC] and all of the owners of real estate lying within the radius of one mile from the Real Estate ..."

41. No remonstrators appeared in opposition to the request, but Mr. Bohleber, attorney for the remonstrators of VC–2–2001, VC–3–2001 and VC–4–2001, stated in part "So, we don't have that signed, but upon [Appellees–Plaintiffs' counsel's] representations made here this evening, we are comfortable moving forward and saying that we have reached a compromise and no longer have opposition to these rezonings." Mr. Bohleber went on to state with respect to the restrictive covenants entered into between his clients and Three I, "So, the covenants themselves impact, not what you are considering this evening, but they are a consideration for my clients not opposing this rezoning."

42. Jim Farney, an engineer with Bernardin & Lockmueller & Associates hired by the [Appellees–Plaintiffs], explained in great detail all of the activities that had taken place to date to incorporate recommendations from the County Highway Engineer, Evansville Urban Transportation Study (EUTS) and the Indiana Department of Transportations (INDOT). He indicated the recommendations of these agencies would be incorporated into the overall development plan which was required by the [UDC], and that these agencies were pleased with the fact that the plan would create one entrance on Boonville–New Harmo-

ny Road for not only the property which was the subject of the rezoning request but also provide the access for the already commercially zoned property at the corner of U.S. 41 and Boonville–New Harmony Road and resulting in an overall safer ingress and egress point further away from the intersection. There was no opposition stated or placed in the record to the rezoning petitions by EUTS, the County Highway Engineer or INDOT and no information was presented to refute any of the evidence presented by Three I through its attorney and engineer.

. . . .

44. Following the discussion, Commissioner Mourdock voted first in favor of the rezoning requests followed by "no" votes by Commissioners Fanello and Mosby.

45. As set forth in the Conclusions of Law below, Commissioners are not required to make findings of fact in denying a rezoning petition. Nevertheless, the Commissioners stated their reasoning for their respective votes:

As to the vote on VC–17–2001:

Commissioner Mourdock: Yes.

Commissioner Fanello: Well, I do appreciate you all working together and trying to come to resolve, but I still have major concerns about development on 41, so I'm still going to have to vote no.

President Mosby: I haven't changed my mind from the previous time. I still have concerns further on back towards Old State Road, and I'm going to vote no.

As to the vote on VC–18–2001:

Commissioner Mourdock: I'll again vote yes, and note that with the Master Plan that is in place for the US41 Corridor, I think this certainly fits as what they describe as a buffer. I also think it sends a bad signal when we

encourage people to leave this meeting after, either APC or this meeting and tell them to work together. They work together to come back so there are no remonstrators, and then we change our mind, it appears. So, again, I vote yes.

. . . .

Commissioner Fanello: Just in response to what Commissioner Mourdock just said, it's great to work together, and I think they did work together very well, but the fact remains that there are traffic problems on U.S. 41. Things haven't been developed properly out there. I'm still concerned about ... the day I can drive down U.S. 41 and not think I'm going to get killed, then maybe I'll be happy about development out there. That has nothing to do with residents working together. You know, their concerns were, I believe, safeguarding against future development out there as well. So, I don't know that [they're] completely in favor of it, they were just trying to meet in the middle. So, I'm still going to vote no. President Mosby: Just to answer your one question, I will state for the record, I was not here when this was brought up for reconsideration. Have I to this day talked to anybody since the last rezoning meeting about any of this? The answer is no. So, I've had no info on this, and I was not here at the reconsideration meeting to vote that night. I vote no.

46. There was no evidence that Commissioner Fanello's concerns were based upon her familiarity with the geographical area of the subject property or the remonstrators' comments to the previous rezoning petitions.

47. Following the vote, representatives of Three I requested that the [Board] table the matter and seek any further information they thought was necessary from representatives of INDOT, the County Highway Engineer and EUTS to verify the data presented by Three I. The [Board] did not respond to this invitation and proceeded with other business.

. . . .

## CONCLUSIONS OF LAW

1. The Court hereby incorporates any findings more appropriately deemed as conclusions of law.

2. Zoning decisions by county commissioners are legislative acts. (citations omitted). However, they are subject to challenge through declaratory judgment actions. (citation omitted).

3. This remedy exists due to the recognition that the law favors the free use of land and zoning regulation and powers are to be strictly construed because they are in derogation of common law. *Cooper v. Calandro*, 581 N.E.2d 443 (Ind.Ct. App.1991).

4. Zoning decisions by legislative bodies, therefore, may be reversed if said decision bears no substantial relationship to the health, safety or welfare of the community or is unreasonable, arbitrary or capricious. (citation omitted).

5. A court cannot inquire into the motives of members of a local legislative body when acting in a legislative capacity. [*Town of Schererville v. Vavrus*, 180 Ind.App. 500, 389 N.E.2d 346, 351 (1979) ]. In this case, however, no inquiry by the Court was necessary since the motives of the Commissioners were stated in the record of their December 17, 2001 meeting.

6. Therefore, the Court turns to the "arbitrary and capricious" standard to determine whether the actions of the [Board] were arbitrary and capricious.[3]

---

3. We are omitting three pages of definitions for the term "arbitrary and capricious" in-

. . . .

10. A court will not intervene in the local legislative process as long as it is supported by some rational basis. (citation omitted).

11. A "rational basis" in the context of a zoning decision by a legislative body, is a basis which is supported by objective evidence that is relevant to legitimate criteria for the fixing of zoning classifications. *Town of Schererville,* 389 N.E.2d at 350.

12. The "rational basis" to support the decision of a board of commissioners must be based upon this criteria and have a real and substantial relationship to public, health safety, morals or general welfare of the community. *Field v. Area Plan Commission of Grant County,* 421 N.E.2d 1132 (Ind.Ct.App.1981).

. . . .

13. The issue here is not whether there was any evidence to support the [Board's] decision but rather whether there existed substantial evidence.

14. " 'Substantial' is almost synonymous with 'reasonable' and is more than 'any' evidence." *Guhl v. Par–3 Golf Club, Inc.,* 238 Ga. 43, 231 S.E.2d 55, 57 (Ga.1976).

15. Although the individual Commissioners had no duty to state their reasons for their individual decision to vote for or against the petitions, once they express the basis for their opinion, the Court must assess the legal sufficiency of the reasons given and determine whether, if legally sufficient, they had a factual basis. *83 Am Jur 2d Zoning and Planning sec. 1023.* In addition, not only must they give reasonable notice to the [Appellees–Plaintiffs] of the factual basis for their opinion but they must also give the [Appellees–Plaintiffs] adequate opportunity to explore and re-

but those opinions. Due process of law requires that the [Appellees–Plaintiffs] have an opportunity to know the facts on which the [Board] act[s] and to prepare intelligently for the hearing and offer rebuttal evidence.

16. The Court only considers the evidence that was presented to the [Board] pertaining to the subject petitions and not prior rezonings. "The relevant inquiry is not how the Council treated past petitions but whether the City Council had a reasonable basis for its decision in the present case." [*Ogden v. Premier Properties, USA, Inc.,* 755 N.E.2d 661, 672 (Ind.Ct.App.2001) ].

17. The [Board's] actions were arbitrary and capricious for the reasons [sic], including the following:

A. Concern for safety is a proper concern; however, given the positions of INDOT, EUTS and the County Engineer and the requirement that a traffic impact study be completed prior to obtaining permits, and that it then be complied with, the Court can find no rational basis, in the Minutes of the meeting of December 17, 2001, for the Statements and votes of the two dissenting Commissioners. Their votes were inconsistent with the opinion of the experts, that is, INDOT, EUTS, the County Engineer and Mr. Farney.

B. The statement of Commissioner Fanello that "I'm still concerned about . . . the day I can drive down U.S. 41 and not think I'm going to get killed . . ." is, based upon the evidence in the Minutes of the meeting of December 17, 2001, nothing more than a subjective and generalized, albeit prudent, concern that exists (or should) when any member of the motoring public operates a vehicle on any public roadway. However, this comment and vote were made despite

cluded in the trial court's conclusions of law.

the undisputed evidence that the developer would be required to meet all requirements of the EUTS, the INDOT and the County Highway Engineer; the fact that the developer's plan would in fact improve ingress and egress for the existing commercial area at the intersection of U.S. 41 and Boonville–New Harmony Road; and, despite the fact that none of these agencies voiced any opposition to the rezoning requests. The vote by Commissioner Fanello cannot be said to be reasonable under the facts and circumstances which were disclosed in the Minutes of the [Board's] meeting of December 17, 2001 and does not constitute a rational basis for her dissenting vote.

C. There was no evidence that the proposed rezonings would result in increased traffic or danger to the motoring or pedestrian public. Even if the Court were to consider the statement of the Staff Report that the intersection of Highway 41 and Boonville–New Harmony experiences heavy traffic, it becomes obvious that, despite Commissioner Fanello's subjective concern for her own safety, many members of the motoring public nevertheless choose to traverse the roadways around the subject property. *A fortiori*, it is logical that commercial development will generate traffic. However, the Minutes of the meeting did not disclose a discussion of the amount or types of traffic or whether the proposed development would merely result in a redirection of existing local traffic, which would have supported Commissioner Fanello's vote.

D. There was no evidence that either Commissioner Fanello or Commissioner Mosby had any expertise in the areas of traffic safety, road design, highway engineering, or the other complexities of that discipline, nor that they had any personal knowledge of or recent experience with the traffic conditions in the area to be rezoned.

E. For Commissioner Fanello to further base her rezoning decision upon the statement that "[t]hings haven't been developed properly out there" is to decide this rezoning application upon evidence not in the Minutes and on other rezonings in the vicinity, which the law clearly holds is not permissible.

F. The statements of Commissioner Mosby that "I haven't changed my mind from the previous time. I still have concerns further on back towards Old State Road, and I'm going to vote no," (as to his vote on VC–18–2001) and "[h]ave I to this day talked to anybody since the last rezoning meeting about any of this? The answer is no. So, I've had no info on this, and I was not here at the reconsideration meeting to vote that night. I vote no," were made notwithstanding the lack of substantial evidence in the Minutes concerning traffic, the fact that the landowners along Old State Road were not remonstrating, and that a private covenant was being placed of record which would prevent any commercial development along Old State Road.

G. There was no evidence in the Minutes of the meeting that the proposed uses were inconsistent with the proposed zoning.

H. There was evidence in the record to support the vote of Commissioner Mourdock.

I. "[A] zoning determination is not controlled by public sentiment. However, the feelings of surrounding landowners are relevant." [*Hills v. Area Plan Comm'n of Vermillion County*, 416 N.E.2d 456, 463 (Ind.Ct.App.1981) ]. In the instant case, there was no remonstrance to the Petitions and, in fact, the attorney for the previous remonstrators

stated: "By their lack of presence here, they [the remonstrators] are in agreement with this plan as it is currently stated." The fact that there was a [UDC] does not commit or bind the [Board] to that agreement; (*Ogden,* 755 N.E.2d at 668) however, it is a factor the Court can consider in determining whether or not the action had a rational basis or was arbitrary and capricious.

18. Notwithstanding this record, the dissenting Commissioners voted to deny the rezoning petitions.

19. Justice Oliver Wendell Holmes stated, "certainty, generally, is illusion, and repose is not the destiny of man." *Holmes, The Path of the Law* (1897). The purpose of the law is to set standards and provide some certainty in our relationships, but complete certainty can never be achieved. What the law expects is reasonable possibilities predicated not upon speculation, but rather upon objective data and standards. Nothing has been presented to the court, or for that matter contained in the Minutes of the [Board's] meeting, which would move the concerns of the dissenting Commissioners beyond speculation. There was no credible evidence in the Minutes of the [Board's] meeting which gave objective proof to their concerns, however sincere they may have been.

20. For the Court to sustain the action of the [Board], there must be some evidence from which the rational mind is relieved from that uncertainty which results merely from speculation or fancy. Here, there was none.

21. Stated simply, there was no substantial evidence in the Minutes of the December 17, 2001 meeting of the [Board] to support the positions of the two dissenting Commissioners. The discretion they exercised only serves to render unpredictable and possibly inequitable decisions if exercised too greatly.

22. "[T]he county has taken willful and unreasonable action without consideration and in disregard of the facts or circumstances of the case." [*Bryant v. County Council of Lake County,* 720 N.E.2d 1, 5 (Ind.Ct.App.1999) *trans. denied.*], *Ogden,* 755 N.E.2d at 669.

23. The stated reasons for Commissioner Fanello's and Mosby's decisions to vote "no" are not convincing enough to create a rational basis under an objective standard.

24. The evidence in the Minutes of the [Board's] meeting, taken as a whole, does not provide a reasonably sound evidentiary basis for its decision. It is not supported by substantial, reliable and probative evidence and does not provide substantial evidence for the votes of the dissenting Commissioners. *Indiana Alcoholic Beverage Commission v. Johnson,* [158 Ind.App. 467] 303 N.E.2d 64, 67 (Ind.Ct.App.1973).

25. The decision of the majority of the [Board] was arbitrary and capricious, lacking of support upon any rational basis, and was unreasonable.

26. No general issues of material fact exist nor is there conflicting evidence.

27. [Appellees–Plaintiffs] are entitled to judgment as a matter of law.

28. The circumstances of this case warrant reversal of the [Board's] decision.

29. [Appellees–Plaintiffs] are entitled to Judgment ordering the [Board] to grant [Appellees–Plaintiffs'] rezoning Petitions.

## JUDGMENT

The Court hereby grants partial summary judgment in favor of [Appellees–Plaintiffs] and against the [Board] and reversing the decision of the [Board] in denying rezoning petitions VC–18–2001 and VC–17–2001 and ORDERS the [Board] to approve said rezoning petitions effective as of the date of this

entry and direct the [Board] to take other necessary actions consistent herewith. The court further hereby enters its judgment denying the [Board's] Motion for Summary Judgment.

(Appellant's App. pp. 300–331).

The Board now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

When we review the grant or denial of a summary judgment motion, this court stands in the shoes of the trial court. *Mattingly v. Warrick County Drainage Bd.*, 743 N.E.2d 1245, 1247 (Ind.Ct.App. 2001). We do not reweigh the evidence designated by the parties. *Bryant v. County Council of Lake County*, 720 N.E.2d 1, 5 (Ind.Ct.App.1999) *trans. denied.* Instead, we must determine whether a genuine issue of material fact exists and whether the trial court correctly applied the law. *Id.* Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 6. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Id.*

Rezoning is a legislative process. *Bryant*, 720 N.E.2d at 5. There is no provision for an appeal of the Board's denial of a zoning ordinance. *City of Anderson v. Associated Furniture & Appliances, Inc.*, 398 N.E.2d 1321, 1323 (Ind.Ct.App.1979). The procedure for review of such legislative action is to bring a suit for declaratory judgment or other similar attack. *Id.* By this process, a party may seek review of the action to determine constitutionality, procedural soundness or whether it was an arbitrary, capricious or unreasonable action. *Id.* Because the action is "legislative" and not "judicial" in nature, the reviewing court is much more limited in its scope of review. *Id.*

Generally, whether to rezone a particular piece of property is a matter left to the sound discretion of the local legislative body. *Bryant*, 720 N.E.2d at 5. We will not intervene in the local legislative process as long as it is supported by some rational basis. *Id.* The courts may reverse a board or commission's decision regarding rezoning only if it is arbitrary or capricious; that is, the board or commission has taken willful and unreasonable action without consideration and in disregard of the facts or circumstances of the case. *Ogden v. Premier Properties, USA, Inc.*, 755 N.E.2d 661 (Ind.Ct.App.2001).

### II. Trial Court Error

In the instant case, the Board asserts that the trial court erred in granting partial summary judgment in favor of Appellees–Plaintiffs. In support of its assertions, the Board alleges multiple errors committed by the trial court in its review of the Board's determination. Specifically, the Board argues that the trial court improperly reweighed the evidence and substituted its judgment for that of the Board. Moreover, the Board contends that the trial court applied the wrong standard of review.

The Board's allegations of error are based on the legal conclusions drawn by the trial court using legal standards set forth in its Conclusions of Law. On appeal, we review de novo legal standards applied by the trial court in its Conclusions of Law. *Amrhein v. Eden*, 779 N.E.2d 1197, 1206 (Ind.Ct.App.2002). Consequently, we owe no deference to the trial court when we find it has applied the wrong legal standard to properly found facts. *See id.; Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind.Ct.App.2001).

Our review of the trial court's Conclusions of Law reveals one incorrect standard of law, the misapplication of which seems to have prompted the trial court to reweigh the evidence and substitute its own judgment for that of the Board. Specifically, in its Conclusion of Law Number 15, the trial court determines that, even though the Board's commissioners are not legally obligated to state reasons for their votes, if they do express an opinion, the reviewing court "must assess the legal sufficiency of the reasons given and determine whether, if legally sufficient, they had a factual basis." (Appellant's App. p. 324). The trial court cites to 83 Am.Jur.2d Zoning and Planning § 1023 in support of this proposition. However, § 1023 is entitled "Administrative action" and clearly applies to administrative actions. As stated above, the instant case is a legislative action, not an administrative action; therefore, § 1023 does not apply to this case.

Here, in determining whether to grant the subject rezoning petitions, the Board was a legislative body acting in its legislative capacity. As such, the Board was not required to make findings of fact to support the exercise of its legislative discretion. *See Town of Schererville*, 389 N.E.2d at 352. The court *may not* inquire into the motives of the members of a local legislative body when they act in their legislative capacity. *Bryant*, 720 N.E.2d at 5 (emphasis added). In fact, if there is *any* rational basis for a zoning decision from the objective facts, the actual motive for the decision becomes immaterial. *Town of Schererville*, 389 N.E.2d at 352 (emphasis added).

Therefore, in considering the Motion for Declaratory Judgment regarding whether the legislative determination of the Board was arbitrary and capricious and without a rational basis, the trial court was limited to reviewing the Board's compliance with the statutory procedure for amending zoning ordinances, and limited to reviewing the evidence before the Board during its consideration. Then, if the trial court found any rational basis supporting the Board's determination, the law required the trial court to affirm the Board's determination. *See Town of Schererville*, 389 N.E.2d at 352.

As determined above, the trial court applied an incorrect legal standard to its Findings of Fact. Thus, we are now compelled to apply the appropriate standard of law to determine whether Appellees–Plaintiffs' Motion for Partial Summary Judgment was properly granted.

### III. *Motion for Partial Summary Judgment*

In their Motion for Partial Summary Judgment, Appellees–Plaintiffs argue that the Board's denial of their petitions to rezone property was arbitrary and capricious, without a rational basis, and not in conformity with Indiana law. Specifically, Appellees–Plaintiffs contend that there are no facts in the record that would support a reasonable person reaching the same conclusion as that reached by the Board in their denial of the rezoning petitions. We disagree.

The procedure for considering proposed zoning ordinances is set forth in statute. In determining whether to adopt or deny rezoning petitions, the Board must "pay reasonable regard" to the following criteria:

(1) the comprehensive plan;

(2) current conditions and the character of current structures and uses in each district;

(3) the most desirable use for which the land in each district is adapted;

(4) the conservation of property values throughout the jurisdiction; and

(5) responsible development and growth.

Ind.Code § 36–7–4–603. Moreover, when adopting zoning ordinances, the Board "shall act" for the purposes of:

(1) securing adequate light, air, convenience of access, and safety from fire, flood, and other danger;

(2) lessening or avoiding congestion in public ways;

(3) promoting the public health, safety, comfort, morals, convenience, and general welfare; and

(4) otherwise accomplishing the purposes of this chapter.

I.C. § 36–7–4–601.

■ In the instant case, when the Board considered Appellees–Plaintiffs' two rezoning petitions at the December 17, 2001 meeting, the individual commissioners asked questions about the UDC, traffic concerns, Appellees–Plaintiffs' plans to widen a stretch of Boonville–New Harmony Road from U.S. 41 to Old State Road, and the effect of the U.S. 41 reconstruction on the proposed development. After Appellees–Plaintiffs presented their petitions, the two dissenting commissioners made comments while casting their votes, as reflected in the trial court's Finding of Fact Number 45.

In applying the incorrect legal standard of Conclusion of Law Number 15 to Finding of Fact Number 45, the trial court essentially considered the commissioners' somewhat vague comments as findings of fact.[4] Subsequently, the trial court determined that the Board's decision was arbitrary and capricious and lacked a rational basis. The trial court's reasoning for this determination is enumerated in its Conclu-

sions of Law Number 17(A) through (I). For instance, in its Conclusion of Law Number 17(A), the trial court states that, "[c]oncern for safety is a proper concern; *however* . . . [t]heir votes were inconsistent with the opinion of the experts, that is, INDOT, EUTS, the County Engineer and Mr. Farney." (Appellant's App. p. 325) (emphasis added)[5] Likewise, in Conclusion 17(B), the trial court says that Commissioner Fanello's concern about "the day I can drive down U.S. 41 and not think I'm going to get killed" was a "prudent" concern, but not "reasonable," given the fact that no one voiced any opposition to Appellees–Plaintiffs' rezoning request. (Appellant's App. p. 325).

However, we find that none of the trial court's Conclusions of Law Number 17(A) through (I) demonstrate that the Board's legislative action of denying Appellees–Plaintiffs' rezoning petitions was arbitrary and capricious. Rather, we find that the trial court's reasoning in Conclusions of Law Number 17(A) through (I) shows that the trial court improperly reweighed the evidence that was before the Board. For example, we find that the trial court's statement in Conclusion of Law Number 17(A) disregards the commissioner's rational concern for public safety and suggests that the opinions of transportation experts should have been given more weight by the Board. Similarly, with regard to Conclusion of Law Number 17(B), we find the commissioner's "prudent" concern about her own and other's safety while driving through the subject area shows a rational basis for denying the petition to rezone adjoining property for

---

4. As noted above, when, as here, the Board functions in its legislative capacity, it is not required to provide findings of fact with its determinations. *See Town of Schererville,* 389 N.E.2d at 352.

5. We note that the expert opinions of INDOT, EUTS and the County Engineer were actually

delivered in the words of Appellees–Plaintiffs' counsel because those transportation experts were not present at the December 17, 2001 meeting. Mr. Farney, who was present at the meeting, was the engineering expert retained by Appellees–Plaintiffs.

additional commercial purposes. As stated above, it is the function of the Board and not the trial court to weigh the factors involved and to fix the zoning classification. *Town of Schererville*, 389 N.E.2d at 352.

Therefore, we find that concerns expressed by the commissioners about public safety, current traffic congestion and the likelihood of more traffic, and responsible growth and development, reflect that the commissioners "paid reasonable regard" to the factors enumerated in I.C. § 36–7–4–603. Accordingly, we find that such concerns constitute a rational basis for denying Appellees–Plaintiffs' petitions to rezone property to C–4. Insofar as the trial court substituted its judgment for that of the Board, the judgment must be reversed. *Town of Schererville*, 389 N.E.2d at 352. Consequently, we find that, because a rational basis exists for the Board's denial of Appellees–Plaintiffs' rezoning petitions, the judgment of the trial court is reversed. *See id.*

### CONCLUSION

Based on the foregoing, we find that the trial court improperly granted Appellees–Plaintiffs' Motion for Partial Summary Judgment. Additionally, we find that Appellees–Plaintiffs failed to raise a genuine issue of material fact regarding the Board's denial of their rezoning petitions. Accordingly, we reverse the trial court and grant the Board's Motion for Summary Judgment.[6]

Reversed.

BAKER, J., and MATHIAS, J., concur.

---

6. We note that the Board's Motion for Summary Judgment is dispositive of the case at hand, as opposed to a countermotion for partial summary judgment, which would require the case to be remanded to the trial court for further proceedings.